WILSON *v.* NEAL and another, County Com'rs, etc.[1]

(*Circuit Court, S. D. Ohio, W. D.* January 19, 1885.)

1. COUNTY BONDS—COUPONS—DEMAND OF PAYMENT—NO FUNDS.
    That there were no funds in the county treasury available for their payment, is a sufficient excuse for not presenting and demanding payment of coupons payable "on presentation."
2. SAME—ULTRA VIRES—RATE OF INTEREST—PAYABLE SEMI-ANNUALLY.
    County commissioners were authorized to issue bonds "bearing interest at six per centum per annum." *Held,* that bonds bearing that rate, *payable semi-annually,* are within the authority vested in the commissioners.
3. SAME—CONSTRUCTION OF STATE STATUTES—DECISIONS OF STATE COURTS.
    In construing statutes of a state the United States courts follow the decisions of the courts of that state.
4. SAME—OHIO—COUNTY AUDITOR SHOULD ISSUE WARRANTS FOR PAYMENT OF BONDS.
    Under the statutes of Ohio it is not necessary that the holders of county bonds should apply to the county auditor to issue his warrant upon the treasurer for the payment of either principal or interest. It is the auditor's duty to issue the proper warrants and deliver them to the treasurer without request of the bondholders.
5. SAME—INTEREST ON INTEREST.
    Holders of county bonds, issued under the laws of Ohio, which stipulated for the payment of interest semi-annually, part only of the bonds having coupons therefor attached, and the semi-annual installments of interest not being paid when due, are entitled to recover interest upon all such semi-annual installments from the date they became due.

At Law.

*Thomas & Thomas,* for plaintiff.

*White, McKnight & White,* for defendant.

SAGE, J. The plaintiff sues to recover the principal and interest of certain bonds bearing interest at 6 per centum per annum, payable semi-annually, issued in the year 1870 by the county of Brown, to pay the cost of improving a county road. The plaintiff also claims interest upon the unpaid installments of interest from their maturity.

The first defense admits the issuing of the bonds to the contractor who constructed and completed the road, and their transfer to the plaintiff, and that the plaintiff is entitled to recover the amount of the bonds, with interest at the rate of 6 per centum per annum. Defendants say that they have always been ready and willing to pay the plaintiff the amount so admitted to be due, upon presentation of the bonds and coupons, and the delivery of them for cancellation, which the plaintiff has always refused to do without receipt of interest upon the several installments from their maturity. Defendants further answer that they had no power to contract for a greater rate of interest than 6 per cent. per annum.

The second defense sets up the litigation whereby the assessments for the improvements of said road and their payment were enjoined

[1] Reported by Harper & Blakemore, Esqs., of the Cincinnati bar.

until 1877, and the defendants prevented from raising the money to pay said bonds or any part of the interest thereon, or from paying the same or any part thereof. The defendants aver that, as soon as the injunction was dissolved, they proceeded to collect the assessments and apply them to the payment of outstanding bonds and interest, but that the plaintiff never in person, or by agent or attorney, presented his bonds to the auditor of the county for redemption and cancellation, or demanded from the auditor his warrant upon the treasurer for the payment of the same. The defendants also allege that since 1878 there have been at all times funds in the treasury of said county ample for the payment of said bonds, and 6 per cent. per annum interest thereon.

The third and last defense is that said coupons were never presented to the auditor, and warrants obtained from him for their payment by the treasurer. Defendants admit that about the twenty-seventh of May, 1881, said bonds and coupons were presented to the treasurer of Brown county by the plaintiff, and payment demanded, with a demand also for interest on the coupons, which was refused, but the treasurer offered to pay the bonds, with simple interest, on the surrender of the bonds and coupons, which was declined.

The plaintiff replies that it was understood by and between the county commissioners and the parties to whom the bonds were delivered, and at the time of their delivery, that the same should be paid by the treasurer of the county directly, without the warrant of the auditor, in accordance with the uniform custom in said county, and that in accordance with said custom the auditor at all times refused to issue warrants in such cases. He also denies the allegation of the answer that the treasurer, in May, 1881, offered to pay principal and simple interest, and avers that at that time the treasurer informed him that he had no funds wherewith to make payment, and denies that there ever was money in the treasury to pay the plaintiff's demands. These are all the allegations of the reply necessary for the purposes of this decision.

The improvement of the road was ordered, and an assessment made by the county commissioners, in the year 1866, upon a petition under the act of April 5, 1866. 63 Ohio Laws, 114. The act authorizes the commissioners to issue the bonds of the county for the payment of the expense of the improvement, payable in installments, or at intervals, not extending in all beyond the period of five years, and bearing interest at 6 per centum per annum, and directs that the assessment shall be divided in such manner as to meet the payment of principal and interest of the bonds. This act was repealed twenty-ninth March, 1867, (64 Ohio Laws, 80,) and a new act substituted; but it was provided that the repeal should not affect or impair any right acquired or liability incurred under the repealed act. The county commissioners were authorized by the act of 1867 to issue bonds, payable in installments, or at intervals, not exceeding in all five years,

bearing interest at a rate not exceeding 7 per centum per annum, payable semi-annually. On the fifteenth March, 1869, (66 Ohio Laws, 24,) the section of the act of 1867 authorizing the issuing of bonds was amended, but not in any particular material to this case. The saving clause of the act of 1867 prevented that act, and the repeal of the act of 1866, from affecting the proceedings, including the assessment, for the improvement of the road to pay the cost of which the bonds sued upon were issued, and, in the opinion of this court, reserved to the commissioners the right to issue bonds in payment of the expense of said improvement, as provided in the act of 1866. The act of 1867 was not amendatory; it was new legislation relating to the same subject-matter as the act of 1866, which it repealed. The general reservation of all right acquired and liabilities incurred, included the right vested in the county commissioners to issue bonds to pay the expense of the improvement which had been ordered, and the assessment made before the passage of the act of 1867. But if the bonds depend for their validity upon the act of 1867, or the amendment of 1869, the result in this case would not be affected, as we shall presently see. The validity of the bonds must be sustained upon that act and amendment, if not upon the act of 1866; for it cannot be concluded that the legislature intended, notwithstanding the reservation in the act in 1867 in favor of rights accrued and liabilities incurred, to nullify that reservation by taking away from the commissioners the right to issue bonds for any improvement ordered, and for which an assessment had been made under the act of 1866.

The bonds in this case were issued in 1870. No payments of principal or interest have been made. They are payable 48 months after date, with interest at 6 per cent. per annum, payable semi-annually. Some of the bonds have interest coupons, and the interest is made payable "on presentation of proper coupon." Others are without coupons, and provide upon their face for the semi-annual payment of interest.

The validity of the proceedings, of the order for the improvement, and of the assessment under which the bonds sued upon were issued, was contested, and during the litigations, which continued until late in the year 1877, no assessments were collected. The first payment into the county treasury on account of assessments was in February, 1878, and until then there were no funds available for the payment of principal or interest of bonds. Neither bonds nor coupons were in the mean time presented for payment. On the twenty-seventh of May, 1881, the plaintiff, by his attorney, presented his bonds and coupons and demanded payment, with interest upon the coupons from the date of their maturity. At the maturity of the coupons, and of the bonds, there were no funds in the county treasury for their payment. That was sufficient excuse for the failure to present them and demand payment. The stipulation for the payment of the interest on presentation of the proper coupon imported on the part of the commissioners

that the county would have the money in the treasury ready for pay-ment when the interest became due. It is necessary to plead and prove affirmatively that fact to make non-presentment and the failure to demand payment available as a defense. Jones, R. R. Secur. § 334, and cases cited. The defense that there was no presentment or demand of payment is, therefore, not well taken.

It is insisted, however, that the commissioners exceeded their au-thority in stipulating for the semi-annual payment of interest, for the reason that the law limited their authority to the issue of bonds "bear-ing interest at 6 per centum per annum." It is urged that the con-tract to pay interest semi-annually was *ultra vires* and void, and that, therefore, only 6 per centum per annum, payable annually, is recov-erable. There is no doubt that the commissioners were limited by the authority conferred by the statute. But the statute fixes only the rate of interest; it is silent as to the times of payment. The bonds bear but 6 per centum per annum interest, and that it is made payable 3 per centum in 6 months and 3 per centum in 12 months does not increase the yearly rate. The proposition that the stipulation to pay the lawful rate in semi-annual installments is usurious, is not sound; for the legal presumption is that parties to a contract intend perform-ance according to its terms, and all that was necessary to avoid the payment of interest upon the coupons was prompt payment upon their maturity. *Monnett* v. *Sturges*, 25 Ohio St. 384, and *Cook* v. *Court-right*, 40 Ohio St. 248, are conclusive upon this point. In constru-ing the statutes of a state, the United States courts adopt and follow the decisions of the courts of the state.

There is another consideration which, in view of the reasoning of the court in *Cook* v. *Courtright*, cited above, sheds light upon this branch of the case. The county commissioners were authorized to issue the bonds of the county, payable in installments, or at intervals, not extending in all beyond the period of five years. They could, if they saw fit, make them payable, some in one month, some in three months, some in six months, and others at any other intervals within five years,—all bearing interest at 6 per centum per annum,—and thus provide for the payment of interest monthly or quarterly or semi-annually, and no objection could be successfully urged to their valid-ity for that reason. How can there be any difference, in principle, between that mode of proceeding, and aggregating the sums of the short bonds in one long bond, and making the interest on that bond payable quarterly or semi-annually, or even monthly? It is true that the bondholder might immediately, on payment, loan the interest paid him at a percentage, but who ever heard that that fact would taint the original transaction with usury?

Was it necessary to present the bonds and coupons to the auditor, and obtain his warrant upon the county treasurer? The law in force when these bonds matured, relating to the redemption and cancella-tion of the securities for the funded debt of counties in this state, is

the act of February 28, 1859. 56 Ohio Laws, 28. It makes it the duty of the county auditor to draw at the proper time his warrant upon the treasurer for the payment of such installments of principal and interest as may be then due, and to deliver the same to the treasurer, and the duty of the treasurer to thereupon make payment. The law now in force (Rev. St. Ohio, § 1063) contains the same provision in effect. It is nowhere made the duty of the holder of the securities to apply to the auditor for a warrant. That is between the auditor and the treasurer, and the bondholder has nothing whatever to do with it, and is not responsible for the default of the auditor in that behalf. He has no right to demand or to receive the warrant. The auditor has no right to deliver it to any one but the treasurer. Moreover, by section 2 of the act of 1859, it was provided that if "from any cause" (and that includes the failure of the auditor to make out and deliver to the treasurer the proper warrant) the debt or installments of interest be not paid at the time and place of maturity thereof, it should be the duty of the treasurer at any time afterwards to pay the same as funds in his hands applicable to that use might admit; but if the treasurer was ready with funds to make payment at maturity, and the holder of the security did not have the same then and there present and in readiness to be surrendered, or to have payment indorsed thereon, as provided by the law, the county should not thereafter be bound to pay interest thereon until payment should have been afterwards demanded and refused at the office of the county treasurer. This provision was carried into the Revised Statutes, and is yet the law of the state. Rev. St. Ohio, § 1064.

What are the facts of this case? It is stipulated as an agreed fact that the auditor never drew any warrant for the payment of principal or interest of any of the bonds sued upon, or of any others of the same class, and that it has been the uniform custom in Brown county, ever since the passage of the law of 1867 authorizing the improvement of county roads by assessment, for the treasurer to pay the bonds and coupons issued for such improvement without such warrant upon presentation to him of the bonds or coupons, provided there was money in the treasury applicable to the payment of the same. It is enough to say of this custom that it is not worth the slightest consideration. It was at all times the auditor's duty to look to the statute. There was no such money in the treasury until February 28, 1878, when there was paid upon assessments the sum of $2,426.95. In August, 1878, were paid $359.54, and subsequently there were payments from year to year until in February, 1884, the last payment, of $4,016.05, was made, the total being $61,097.98, and the total amount of the principal of the bonds issued and outstanding, $56,000. It is proven, moreover, that the treasurer always refused to pay interest on the coupons and upon the overdue installments of interest. Simple interest at 6 per centum per annum, or 6 per cent. "straight," as he expresses it, was all he would pay. It is beyond question that the

failure of the auditor to draw the proper warrants and deliver them to the treasurer is no defense to the plaintiff's claim. Is he, then, entitled to interest upon his coupons, and upon the overdue installments of interest upon the bonds issued without coupons? The law of Ohio provides for the payment of interest upon every debt due and unpaid, without any stipulation to that effect in the contract or obligation out of which the debt arose. The cases of *Monnett* v. *Sturges* and *Cook* v. *Courtright*, cited above, establish that the law applies to overdue installments of interest as fully as to the principal. But the proposition is so plain as to need no authority to support it. The law was in force when the bonds in suit were issued, and it entered into and was part of the obligation of the bonds, and it is the duty of this court to enforce it. The plaintiff is entitled to the interest upon his coupons and overdue installments of interest which he demands, and judgment will be entered accordingly.

The objection to the jurisdiction of this court has been heretofore disposed of, and need not be further considered. It is not well taken.