# CHARLESTON.

A. M. HAMILTON *v.* WHEELING PUBLIC SERVICE Co. *et al.*
and
WILLIAM G. CALDWELL *v.* WHEELING PUBLIC SERVICE Co.

Submitted April 19, 1921.   Decided May 3, 1921.

1. MORTGAGES—*Holder of Coupon Bonds Cannot Sue Subsequent Purchaser Assuming Mortgage, or Join Him With Original Obligor.*

   A holder of coupon bonds, secured by a mortgage, ordinarily must, in order to enforce payment of past due interest coupons, sue the obligor who issued them, and cannot, at law, maintain an action against a subsequent purchaser, who has acquired the property mortgaged and as a part of the consideration assumed the obligations and liabilities of the mortgagor. Nor can such purchaser be joined as party defendant with the original obligor in the same action. (p. 576).

2. CONTRACTS—*One Cannot Sue on Contract of Another, Unless Contract Was Made for His Sole Benefit.*

   Section 2, chapter 71, Code, does not authorize one not a party to a contract made for his benefit to sue thereon in a court of law, unless such contract was made for his sole benefit (p. 576).

3. INTEREST—*Negotiable Interest Coupons Bear Interest from Maturity Dates.*

   The general rule is that negotiable interest coupons, attached to or detached from bonds, bear interest from and after their respective maturity dates. (p. 577).

4. SAME—*Interest on Coupon Due Becomes Itself a Principal Obligation.*

   When the interest evidenced by such a coupon has become due and payable, the demand based upon the promise contained therein is no longer a mere incident of the principal indebtedness represented by the bond, but itself becomes a principal obligation. (p. 579).

5. SAME—*No Recovery of Compounded Interest Under Negotiable Interest Coupon on Readiness to Pay at and From Maturity.*

   But the obligor may defeat recovery of the interest so compounded by showing his continued readiness and willingness to pay the sums specified in the coupons from the date of their maturity. (p. 581).

Case certified from Circuit Court, Ohio County.

Separate actions by A. M. Hamilton and by William G. Caldwell against the Wheeling Public Service Company and others. Motions to quash notices of motions for judgment were overruled, and cases certified.

*Reversed in each case.*

*Hubbard & Hubbard* and *Caldwell & Caldwell*, for plaintiffs.

*John J. Coniff*, for defendants.

LYNCH, JUDGE:

The notices prepared at the instance and on behalf of A. M. Hamilton, plaintiff in the first styled action, and served on Wheeling Public Service Company and City & Elm Grove Railroad Company, corporations, joint defendants therein, and at the instance and on behalf of William G. Caldwell, plaintiff in the second, on Wheeling Public Service Company, sole defendant therein, were preliminary processes or warnings of intended motions for judgments against defendants in each of the actions so begun in favor of the respective plaintiffs. They were given pursuant to the provisions of section 6, chapter 121, Code. Their sufficiency for the purposes of the recovery of the judgments contemplated were questioned by defendants and each of them for reasons by the trial court deemed insufficient upon motions to quash. They did not demur. The rulings that court certified here for re-examination and approval or disapproval.

But two questions, arise, and the trial court perhaps considered these only and no others. The first challenges the right of Caldwell to sue and recover a judgment against Wheeling Public Service Company in an action at law and the right of Hamilton to sue and recover a joint judgment against the same company and City & Elm Grove Railroad Company. The actions rest upon over-due interest coupons theretofore attached to and as parts of bond issues authorized and sold by City & Elm Grove Railroad Company, secured by a mortgage binding its property for their pay-

ment both as to principal and interest, payable semi-annually on the first days of January and July of each succeeding year until the maturity of the bonds.   The date of the issuance is not disclosed in the notices or elsewhere in the proceedings.   The coupons, the par value of which together with interest thereon from the date of their maturity for payment, form the basis of the actions, were, as to those owned by Hamilton, due and payable January 1, 1920, and as to those owned by Caldwell, on July 1st of the same year.

Sometime after the date of the mortgage Wheeling Public Service Company acquired the title to the mortgaged property, and, as may be inferred, now is the owner and operator of the utility encumbered, as well as every other species of property of the mortgagor used in connection with such operation.   As part of the consideration for the transfer from one corporation to the other, Wheeling Public Service Company assumed liability for the corporate indebtedness of its grantor, including the outstanding and unliquidated bonds and the coupons annexed to them, and thereby bound itself to be prompt in the discharge of these and other obligations, pursuant to the terms and conditions of the conveyance.

It is not material, according to our view, whether, at the time the notices were given, plaintiffs did or did not then own the bonds, or whether the coupons were or were not detached, although in at least one jurisdiction this difference seems to have some weight upon the second phase of this review.   What is being considered now is the right of the plaintiffs to proceed to judgment in the Caldwell   action against Wheeling Public Service Company, and in the Hamilton action against the same defendant and the mortgagor, City & Elm Grove Railroad Company, jointly.

There can be no question as to the primary liability of the mortgagor.   The property formerly owned by City & Elm Grove Railroad Company that company encumbered to insure and protect prospective or probable purchasers in the payment of the bonds issued by it, including the semi-annual payments of the interest provided for in the mort-

gage and evidenced by the coupons thereto attached.    Upon the faith of the solvency of the security and the payability of the indebtedness secured, plaintiffs and doubtless others seeking sources of investment purchased the bonds in reliance upon the prompt payment of the coupons.    The issuance of the bonds and the execution of the mortgage fixed the status of the mortgagor as the debtor pledged to protect investors in the securities placed by it upon the market. That it contracted to do when the bonds were sold and the proceeds received by the mortgagor, although the purchasers were unknown on the date of the contract.    Within the terms of that instrument were included the coupons as well as the bonds themselves.    There was, therefore, in law and fact such privity between the mortgagor and the investors in the bonds as warrants the proceeding by Hamilton against City & Elm Grove Railroad Company.    But it does not follow as a matter of course that there is such warrant for suing it jointly with the present owner of the property so pledged, notwithstanding assumption by the latter of the liabilities of the former in consideration of the property conveyed.    If the two corporations cannot be joined in one action in a court of law, may Wheeling Public Service Company be sued alone by Caldwell?    Between it and plaintiffs there is no privity of contract, at least the notices disclose none.    The mere fact that it has assumed to pay the indebtness created by its grantor is not sufficient to show such privity as a court can and will recognize and act upon.

Section 2, chapter 71, Code, does not sanction or authorize such procedure.    Insofar as its provisions are applicable to the question now being considered, it says:   "If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such promise or covenant." In *Johnson* v. *McClung*, 26 W. Va. 659, and *King* v. *Scott*, 76 W. Va. 58, this statute is construed.    In the latter case

cited the plaintiff predicated his right to a judgment against the defendant on a deed whereby Mrs. Reed and her husband conveyed real estate owned by one of them to Scott, part of the consideration for the conveyance being his assumption of the indebtedness decreed to be liens upon the real estate conveyed.    The points of the syllabus, two in number, are these:    "Section 2 of chapter 71 of the Code does not authorize one not a party to a contract made for his benefit to sue thereon in a court of law, unless such contract was made for his sole benefit.    A lien creditor of the grantor in a deed by which the land subject to the lien has been conveyed to a third person, in consideration of a certain sum in cash and his assumption of the valid liens thereon and agreement with the vendor to settle the same, cannot maintain an action at law against the grantee on such deed for recovery of the amount of his lien on the land."

Although each of the plaintiffs has a lien on the land and other property of the mortgagor as security for the prompt payment of the bonds and coupons, they are without right to recover in the first instance against the grantee of the mortgagor of the property encumbered. In this respect the court erred in its ruling on the motion to quash the notice in the Caldwell action, as it did also in the Hamilton case, with this difference in the result, that in the latter it is within the power of the plaintiff to amend the notice or to prepare and serve another, as the necessities of the case may require, while the notice in the former case apparently is not so amendable. Though somewhat technical, the rule laid down is of ancient origin and prevails in this state. But the parties are not remediless save in a court of law in circumstances such as these records present. It is the province of the Legislature, not of the courts, to alter, change or abrogate common law procedure or regulations relating to parties necessary or proper to be joined in such actions. Section 7, ch. 121, Code, does not make such alteration or change and does not purport to do so.

The second question raised upon these certificates, and common to both cases, is whether the past due interest coupons

themselves bear interest from their maturity dates.    The rule generally recognized and followed in this state undoubtedly is that interest should not bear interest.    *Genin* v. *Ingersoll*, 11 W. Va. 549; *Waldron* v. *Coal Co.*, 61 W. Va. 280; 7 Enc. Dig. 838.    But this principle admits of certain exceptions and modifications even where ordinary obligations to pay money are involved.    For instance, it has been held that an agreement to pay compound interest is valid if made after the interest which is to bear interest has become due and payable.    *Craig* v. *McCulloch*, 20 W. Va, 148; *Stansbury* v. *Stansbury*, 24 W. Va. 634; *Barbour* v. *Tompkins*, 31 W. Va. 410.    And interest on judgments and decrees may properly be awarded even where such judgments and decrees themselves include the principal and interest theretofore accrued.    In addition to these there are other recognized exceptions to the general rule, but it is unnecessary to enter upon an extended discussion of their nature and the circumstances under which it is proper to enforce them.    Enough has been said to show that even where ordinary obligations of indebtedness are involved, the rule that interest does not bear interest, though general, is not universal in its application.

Coupon bonds and other commercial paper of a similar nature are not only different in form from ordinary evidences of indebtedness, but rest upon principles which recognize their enforcibility because of their characteristic quality of negotiability by delivery.    Apparently the maker of such paper intends it shall possess many of the attributes of currency, and as such pass from hand to hand until its diversified ownership extends beyond the bounds of commercial centers. To facilitate the quality of negotiability it is customary to attach to the principal    obligation    coupons    containing promises to pay to the bearer, at stated intervals, interest on the debt.    Each coupon bears upon its face its maturtiy date, and the entire series, maturing periodically, covers and provides for the interest on the bond until its maturity. Like it these coupons themselves possess qualities of negotiability from hand to hand after detachment from the bond or other evidence of indebtedness of which they are a part.

Each coupon contains its own obligation and promise to pay. Its attachment to the parent bond has no significance except for the purpose of identification.    It adds nothing to the completeness of the obligation to pay the amount stated on the coupon on the date specified.

That the coupons declared on in these cases are of the class just described is clear from a reading of both notices of motions for judgment.    Though the pleadings do not set them forth in extenso or describe them with particularity, yet they refer to them as "negotiable coupons" issued by the defendant City & Elm Grove Railroad Company, representing semi-annual interest at the rate of five per cent per annum, which matured on dates stated in the pleadings, on bonds issued by the defendant company of the par value of $1,000 each.    Such description is clearly sufficient on a motion to quash to indicate that the coupons in question fall within the class described.

With practical uniformity and unanimity the judicial opinion is that such instruments are not mere incidents of the principal debt to which they are attached, but themselves represent separate and distinct contracts for the payment of money when due according to their terms, and like other promises of a similar character bear interest after default in payment.    "The manifest purpose in making them was to increase the market value of the bonds by giving assurance of prompt payment of the interest.    The intention was to give currency to them as a separate  contract, which would carry with them the usual incident of interest  in case of a failure to pay at maturity. * * * They provided for the payment of the interest before the principal debt became due.    They were designed  to be severed from the bonds.    They were intended to pass from hand to hand by delivery.    They were payable in money,  and at certain times designated.    Their form and nature stamped them as the representatives  of money.    Each successive holder might well conclude that they were thrown on the market as negotiable paper to draw interest from maturity. * * * The purchasers and holders acquired them with that char-

acter reasonably stamped on their face.   Why then shall
they not draw interest after maturity. * * * The maker's
act fairly intended to produce such effect.   Whether they
were afterwards actually detached from the original bonds
is unimportant.   They possessed the same independent
agreement to pay the sums stated, at the times specified.
The company unjustly refused to pay the coupons according
to the agreement.   It is therefore equitable that they should
draw interest." _ Philadelphia etc. R. Co. v. Smith, 105 Pa.
195, 198-9. In Aurora City v. West, 7 Wall. 82, 105, the
Supreme Court of the United States said: "Bonds and
coupons like these, by universal usage and consent, have all
the qualities of commercial paper. * * * Being written con-
tracts for the payment of money, and negotiable because pay-
able to bearer and passing from hand to hand as other ne-
gotiable instruments, it is quite apparent on general princi-
ples that they should draw interest after payment of the
principal is unjustly neglected or refused." See also Nes-
bit . v. Riverside Independent District, 144 U. S. 610, 619.
And in Edwards v. Bates County, 163 U. S. 269, the court
held that in determining the jurisdictional amount in   an
action in a circuit court of the United States to recover on a
municipal bond, the interest coupons were to be treated as
separable independent promises, and not as interest due up-
on a bond.   For other authorities announcing the same
principle, see 2 Daniels, Nego. Instru. (6th Ed.), § 1513; 3
Thompson on Corporations (2d Ed.), § 2325; 2 Fletcher,
Cyclopedia Corporations, § 1056; 22 Cyc. 1507; Gelpcke v.
Dubuque, 1 Wall. 175; Clark v. Iowa City, 20 Wall. 583;
Walnut v. Wade, 103 U. S. 683; Lake County v. Linn, 29
Colo. 446; Cripple Creek v. Adams, 36 Colo. 320; Fox v.
Hartford etc. R. Co., 70 Conn. 1; San Antonio v. Lane, 32
Tex. 405; First Nat. Bank v. Mt. Tabor, 52 Vt. 87; Jefferson
County v. Hawkins, 23 Fla. 223; Humphreys v. Norton, 100
Ill. 592; Rice v. Shealey, 71 S. Car. 161; Kentucky Title Co.
v. English, 20 Ky. L. 2024, 50 S. W. 968; Rea v. Pennsyl-
vania Canal Co., 249 Pa. 239; McDowell v. North Side Bridge
Co., 251 Pa. 585.

Of course, if the company issuing the bonds stood ready at all times to pay the interest called for by the maturing coupons, it would not be just to permit a holder to exact interest thereon by neglecting or failing to present them for payment when due.    Hence the company bound by the contract may defeat the recovery of the interest accrued upon the coupons by showing its continued readiness to pay the principal represented by them.    3 Thompson on Corporations (2d Ed.), § 2325; *Walnut* v. *Wade,* 103 U. S. 683; *Emlen* v. *Lehigh Coal etc. Co.,* 47 Pa. St. 76.    In *Walnut* v. *Wade,* cited, the court said: "If the town had shown that it had money ready to pay the coupons at the time and place where they were payable, this would have been a defense to the claim for interest."

Defendant contends, however, that, following the New York rule, interest should not be collectible upon past-due coupons while they remain in the hands of the holder of the bonds, but only, if at all, when they have been detached and become separate and independent instruments in the hands of one other than the holder of the bonds.    *Bailey* v. *County of Buchanan,* 115 N. Y. 297; *Williamsburgh Savings Bank* v. *Town of Solon,* 136 N. Y. 465; *Long Island L. & T. Co.* v. *Long Island etc. R. Co.,* 178 N. Y. 588, affirming 85 App. Div. 36.    Such is the New York rule, and it is based upon the view that so long as the interest coupon remains in the hands of the holder of the bond, the former is a mere incident of the latter and not a principal obligation itself. But this holding seems rather to be an exception to the general rule and is not followed in other states.    On the other hand, in *Edwards* v. *Bates County,* 163 U. S. 269, a case in which the plaintiff held both the bond and the coupons, the United States Supreme Court expressly states that "when the interest evidenced by a coupon has become due and payable, the demand based upon the promise contained in such coupon is no longer a mere incident of the principal indebtness represented by the bond, but becomes really a principal obligation."

Our conclusion therefore is to reverse the ruling of the cir-

cuit court in case No. 151, with leave, however, to plaintiff to dismiss the Wheeling Public Service Company as party defendant; and to reverse the ruling in case No. 152 for the reason that the action was instituted     against the wrong party defendant.

*Reversed in each case.*