SMITH *v.* FEDERAL CROP INSURANCE CORP.

Apr. 14, 1952.

No. 38368 (58 So. (2d) 95)

Lomax B. Lamb, Jr., for appellant.

**Noel H. Malone,** U. S. Attorney, **Neil Brooks,** Associate Solicitor U. S. Dept. Agriculture, and **W. H. Jolly,** Assistant U. S. Attorney, for appellee.

58

**Kyle, J.**

J. C. Smith sued the Federal Crop Insurance Corporation in the Circuit Court of Quitman County for a balance of $544.58, alleged to be due and owing to him by the corporation under his 1949 cotton crop insurance contract. The case was tried before a jury in the circuit court, and at the conclusion of the testimony the court directed the jury to return a verdict for the defendant. And the jury thereupon returned a verdict in favor of the defendant, and judgment was entered thereon. From that judgment the plaintiff prosecutes this appeal.

The Federal Crop Insurance Corporation is a corporation Government-owned enterprise, created by the Federal Crop Insurance Act, as an "agency of and within the Department of Agriculture". Sec. 503 of Chapter 30, Act of February 16, 1938, 52 Stat. 72, 7 U. S. C. A. §1503.

The plaintiff, J. C. Smith, farmed about thirty acres of land which he rented from Mrs. Virginia O. Lamb for the year 1949. On April 5, 1949, he signed an application for crop insurance. The application was taken by Russell Jennings, an agent of the corporation, engaged in soliciting crop insurance applications from the farmers of Quitman County. Smith was told by Jennings that Smith's coverage under the policy would be 220 pounds per acre. Jennings made this representation to Smith on the basis of a listing sheet furnished him by Earl White, an employee of the Federal Crop Insurance Corporation in charge of the office in Quitman County during the year 1949.

Smith's application for crop insurance provided (1) that "for any crop year of the contract the coverages and premium rates per acre for each insurance unit covered by the contract shall be those established by the Corpo-

ration for that crop year and shall be on file in the crop insurance office for the county." The application also provided (2) that "this application, when accepted by the Corporation, and the commodity coverage cotton crop insurance policy for the applicable year shall constitute the contract." Paragraph A also contained the provision that "no terms or conditions of the contract shall be waived or changed except as authorized in writing by a duly authorized officer or representative of the Corporation." Section 5(a) of the policy provided that "the coverage per acre is progressive by stages of production and shall be that approved by the Corporation for the area in which the insured acreage is located, and shall be shown by practice (s) on the county actuarial table which shall be on file in the county office." The term "County Actuarial Table" was defined in Par. 30(d) of the policy as " * * * the form and related material (including the crop insurance maps) approved by the Corporation for listing the coverage per acre, and the premium rates per acre, applicable in the county."

In 1948 aerial maps were set up in the county for crop insurance purposes, and at that time the corporation established a coverage for each farm shown on the aerial maps. The county agent testified that the coverage per acre for each farm was not fixed arbitrarily, but was based upon the past production record of the farm; and the group area of the farm for crop insurance purposes was determined upon that basis. The area number was then entered upon the aerial map. The maps thus compiled were approved by the state office of the corporation in Jackson and, as thus approved, were used as the basis for the payment of crop insurance benefits by the corporation for the year 1949.

The aerial map, as approved by the state office, showed that Smith's farm was in Area No. 3, and under the policy and the regulations a farm in Area No. 3 was entitled to a coverage of 130 pounds per acre. No contention is made that the past production record of the farm would have justified a different classification.

Jennings testified that he sold Smith the crop insurance policy with the understanding that Smith's land was in Area No. 7 and that his coverage would be 220 pounds per acre. Jennings stated that he only took applications from farmers for crop insurance, and that he sold crop insurance according to the listing sheet furnished to him by the county office.

On December 6, 1949, Smith filed his proof of loss statement in the office of the county agent and was told at that time that his land was in Area No. 3, and the proof of loss statement which he signed showed that the land was in Area No. 3. On the basis of the Area No. 3 classification the amount which he was entitled to receive under the policy was $182.21. If settlement of the loss had been made upon the basis of an Area No. 7 classification, Smith would have been entitled to receive a much larger sum of money.

The county agent testified that the aerial maps compiled as stated above and approved by the state office constituted the "county actuarial table" referred to in Par. 30(d) of the crop insurance policy. He stated that the acreage report sent to the state office showed that Smith's farm was in Area No. 3, and that when Smith's proof of loss statement was prepared in December, 1949, the area number was shown as Area No. 3. White admitted that the work sheets in his office showed that Smith's farm was in Area No. 7, and that from those work sheets salesmen were given information on which they sold crop insurance policies.

The appellant assigns as errors and argues on this appeal two points, as follows: (1) That the court erred in granting the peremptory instruction to the defendant; and (2) that the court erred in denying to him the right to cross-examine Earl White, the agent of the corporation in charge of the Quitman County office, as an adverse witness.

In granting the peremptory instruction requested by the defendant, the lower court followed the rule laid down

by the Supreme Court of the United States in the case of Federal Crop Insurance Corporation v. Merrill, 332 U. S. 380, 68 S. Ct. 1, 4, 92 L. Ed. 10, 175 A. L. R. 1075. In that case the Supreme Court denied recovery on a policy of insurance on the appellee's wheat crop, because of a regulation, duly promulgated by the Corporation and published in the Federal Register, which made ''spring wheat which has been reseeded on winter wheat acreage'' ineligible for insurance. In that case a wheat grower, without actual knowledge of the above-mentioned regulation, applied to the corporation's local agent for insurance on his wheat crop, informing the local agent that most of it was by reseeding on winter wheat acreage; but this information was not included in the written application. The corporation accepted the application subject to the terms of its regulation. Most of the crop on the reseeded acreage was destroyed by drought. During the trial in the state court evidence was permitted to go to the jury to the effect that the respondents had no actual knowledge of the Regulations, insofar as they precluded insurance for reseeded wheat, and that they had in fact been misled by petitioner's agent into believing that spring wheat reseeded on winter wheat acreage was insurable by the corporation. The Supreme Court held that the corporation was not liable for loss on account of the reseeded acreage, and in its opinion said: ██ ██ ''Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority. See, e. g., Utah Power & Light Co. v. United States, 243 U. S. 389, 409, 37 S. Ct. 387, 391, 61 L. Ed. 791; United States v. Stewart, 311 U. S. 60, 70, 61 S.

Ct. 102, 108, 85 L. Ed. 40, and see, generally, In re Floyd Acceptances, 7 Wall. 666, 19 L. Ed. 169.'' The Supreme Court held in the Merrill case that, ''The 'terms and conditions' defined by the Corporation, under authority of Congress, for creating liability on the part of the Government preclude recovery for the loss of the reseeded wheat no matter with what good reason the respondents thought they had obtained insurance from the Government.''

▮▮ The testimony in the case that we now have before us showed that Jennings represented to the appellant that the insurance coverage under his policy would be 220 pounds per acre; and that representation was based upon the information which Jennings obtained from the listing sheet furnished him by the agent in charge of the county office. It is clear that a mistake had been made by someone in compiling the information which appeared on the work sheets in the county office and in the listing sheet that Jennings had in his possession. But the application, signed by the appellant, and the insurance policy delivered to the appellant made it plain that the coverage per acre should be that approved by the corporation and shown by practice on the ''county actuarial table.'' And under the rule laid down in the Merrill case we must hold that the appellant was neither bound nor estopped by the erroneous statements made by its agents to the appellant concerning his acreage coverage at the time of the issuance of the crop insurance policy.

The rule laid down in the Merrill case as pointed out by Justice Jackson in his dissenting opinion, is a harsh rule; but the rule is binding upon us.

The appellant contends, however, that the jury should have been permitted to pass upon the question whether the ''county actuarial table'' referred to in Par. 30(d) of the policy consisted only of the aerial map, as claimed by the appellee, or the aerial map and the work sheets in the county office, and the listing sheet used by the sales agent, and the acreage report issued to the appellant by the county agent, as claimed by the appellant.

But White testified that the aerial maps, which showed the area number of each farm for crop insurance purposes and the coverage for each farm, were the only documents which had been approved by the corporation showing the coverage per acre and the premium rates per acre applicable in the county, and White testified that the work sheets in the county agent's office, the listing sheet used by Jennings in soliciting crop insurance applications, and the acreage report delivered to the appellant in June 1949 constituted no part of the "county actuarial table." And we think that there was no proof in the record which would have warranted a finding that the above-mentioned documents, other than the aerial maps, were a part of the "county actuarial table."

We are also of the opinion that there was no error in the court's refusal to grant the appellant's request that he be permitted to examine Earl White as an adverse witness. White was a mere employee of the corporation in charge of the Quitman County office. He was not an executive officer of the corporation, and in our opinion he was not an "opposite party" within the meaning of Section 1710, Code of 1942, and the appellant was not entitled as a matter of right to call and examine him as an adverse witness. City of Meridian v. Davidson, 211 Miss. 683, 53 So. (2d) 48. Neither does the record show that the appellant was prejudiced by the ruling of the court, by which he was denied the right to call White as an adverse witness. White was called and testified as a witness for the appellant, and from the reading of his testimony it does not appear that he was hostile or evasive in answering the questions propounded to him by the appellant's attorney. We find no error in the record and the judgment of the lower court is affirmed.

Affirmed.

McGehee, C. J., and Lee, Arrington and Ethridge, JJ., concur.