FEDERAL CROP INSURANCE CORP. *v.* DECELL.

No. 39437          January 10, 1955          76 So. 2d 826

644

*Warren E. Burger,* Asst. Atty. Gen., Washington, D. C.; *Robert E. Hauberg,* U. S. Atty., *Edwin R. Holmes, Jr.,* Asst. U. S. Atty., Jackson; *Melvin Richter, Morton Hollander, T. S. L. Perlman,* Attorneys, U. S. Dept. of Justice, Washington, D. C., for appellant.

*Herman B. Decell,* Yazoo City, for appellee.

646

LEE, J.

Suit was instituted by J. E. DeCell in the County Court of Yazoo County against Federal Crop Insurance Corporation to recover certain benefits on account of crop damage for the year 1947. The cause was tried before the county judge, sitting as both judge and jury. There was a judgment for the plaintiff in the sum of $2,026.90, principal, and $130.68 interest to December 3, 1951, the date of the judgment, together with interest thereafter at the rate of 6% per annum until paid.

The circuit court, on the Corporation's appeal, affirmed the judgment of the county court in part, but reversed it in part, and gave judgment for $1,035.07, plus interest thereon at the rate of 6% per annum from December 3, 1951, adjudged to be the difference between the total cash loss of $1,608.51, plus interest, or a total of $1,979.27, and the unpaid premium on insurance of $500.53, plus interest, or a total of $944.20. The Corporation prosecuted a direct, and DeCell a cross, appeal here.

The proof showed that the administrative officer of the Production and Marketing Association — PMA — was responsible for the program which included Federal crop insurance. The crop insurance program was in effect in Yazoo County for the year 1946. James Moore was the administrative officer. Under the approved procedure for the establishment of losses for that year, the farmers were instructed to turn in their gin tickets to the county office as soon as the ginning was completed, at which time the Corporation would send an adjuster to inspect the crop and prepare the claim from the gin tickets.

DeCell had a contract for that year on Kern's Bend Farm. Some time after he had begun harvesting, he went to the PMA office and notified Moore that he anticipated a loss. Moore advised him to proceed with the harvesting, and as soon as it was completed, to turn in his gin tickets. DeCell followed the instructions and turned in his tickets. The adjuster came about the middle of November, inspected the crop, checked the tickets, prepared the proof of loss, directed DeCell to sign the same, which he did in the PMA office, and the claim was subsequently paid. He did not give notice in writing of probable loss, nor did he give notice of loss in writing, other than the gin tickets, until the adjuster prepared the proof and processed the claim.

DeCell's application for insurance for 1947 was accepted. John R. Pepper inspected the cotton acreage in June. DeCell signed the acreage report in blank. Dur-

ing the month of August, he received a copy of the report, after the inspector had made it out. About thirty days later, he checked the report, found a mistake, namely that Kern's Bend Farm should have shown 78.4 acres, whereas the report showed 39.4. He reported this error to Moore, who, he thought, would correct it, but no correction was ever made.

About the middle of November, after harvesting had begun, DeCell realized that he would probably have a loss. He therefore went to the PMA office and notified Moore who told him, as he did the year before, to go ahead and finish the harvesting and turn in his gin tickets. In December, he also notified Moore that, because of the late planting and early snow, harvesting had been delayed and would be late in completion. Moore said, "Finish as soon as you can and bring your gin tickets in."

Upon completion of the harvest, DeCell had his cotton ginned and turned in the tickets about the 19th or 20th of February 1948. In other words, he followed the exact procedure of 1946, and the literal instructions which he had for 1947.

He had used good farming methods. He fertilized the cotton and poisoned against insects. His loss was due solely to flood water, drought, weather and insects, against which hazards the insurance protected him.

However, no adjuster ever came to check the residue of the crop or the gin tickets, or to make out proof of loss, or to process the claim.

The proof further showed that it was Moore's duty, upon receipt of the gin tickets, to make out a form, which was in fact a notice of loss, and to send copies thereof to the state office, to the adjuster and to DeCell, and to retain a copy in the files in his office. But neither the state office, nor DeCell, nor an adjuster received this information, nor was a copy placed in the files.

In June 1948, when collectors sought payment of De-Cell's insurance premium, he informed them that his loss would exceed the premium. From time to time, he

made inquiry about his claim, but without any result. While the state director of the Corporation knew, at that time, that DeCell was claiming a loss, he did nothing about it because the evidence of the previous crop had disappeared and the sixty-day limitation, as he called it, had elapsed. Consequently, the Corporation denied liability, and DeCell filed his suit.

The proof further showed that no farmer had ever prepared a formal writing giving notice of probable loss on his crop. In every previous instance of loss, the Corporation's employees prepared the proof and processed the claim. It was unknown for a claimant to prepare a proof of loss, except when he was dissatisfied with the adjuster's appraisal. In that event, he could make up and file his own version. A letter or the gin tickets, the approved practice, sufficed for the requirement of notice in writing as soon as the farmer saw that he was going to have a loss. In fact, the administrative officer testified that, if such notice had been received, nothing would have been done about the matter until the proof of loss was prepared.

The proof was ample to show that DeCell gave notice of probable and actual loss at the time and in the manner, which was accepted and approved by the Corporation in 1946 — which method was not changed for 1947 — and in compliance with the Corporation's instructions to him on his 1947 loss.

It is clear that the only reason why his proof of loss was not filed was because the Corporation, through its employees, failed to perform the duty which it undertook and assumed, namely, the forwarding of notice from the county administrative officer to its state office, and the preparation of proof of loss by its adjuster, and the processing of the claim.

■■■ The Corporation's contention in the court below and here is that DeCell's failure to file a written notice of probable loss and a written statement in proof of loss barred a recovery.

Under Section 419.13 of the cotton crop insurance regulations, promulgated by the Corporation under authority of the Federal Crop Insurance Act, 52 Stat. 72, as amended, 7 U. S. C. 1501, et seq., provision was made for notice in writing of probable loss, as follows: "Notice of loss or damage of cotton crop. *Unless otherwise provided by the Corporation,* if a loss is probable, notice in writing shall be given the Corporation at the office of the county association immediately after any material damage to the insured crop and before the crop is harvested, removed, or any other use is made of it. Any such notice shall be given in time to allow the Corporation to make appropriate inspection." (Emphasis supplied.) But, it was evidently contemplated that this rule was subject to change. Note the emphasized clause. The proof in this case showed that the Corporation evidently provided otherwise. See Sanborn v. Federal Crop Insurance Corporation, 208 Pac. 728.

Section 419.16 of such regulations, in reference to proof of loss, provided: "Proof of loss. *If a loss is claimed, the insured shall submit to the Corporation a form entitled, 'Statement in Proof of loss,' containing such information regarding the manner and extent of the loss as may be required by the Corporation.* The statement in proof of loss shall be submitted *not later than sixty days after the time of loss,* unless the time for submitting the claim is extended in writing by the Corporation. * * * " (Emphasis supplied). But the Corporation never did prepare or furnish its form, as above described, to DeCell, or process the claim. Because of that dereliction, it was impossible for DeCell to comply with this requirement. The Corporation cannot be permitted, by its act in rendering DeCell impotent to assert proof, to nullify his claim. The loss obviously occurred between the time of planting and January 31, 1948.

Federal Crop Insurance Corporation v. Merrill, 332 U. S. 380, and Smith v. Federal Crop Insurance Corporation, 214 Miss. 55, 58 So. 2d 95, have little, if any,

bearing, on the question here. Other cases cited by the Corporation are likewise not in point.

■■ Section 419.6 of the regulations provided: ''Determination of insured acreage and interest. (a) Promptly after planting a cotton crop each year, the insured shall submit to the Corporation, on a form entitled, 'Cotton Crop Insurance Acreage Report,' a report over his signature on the acreage planted to cotton on each insurance unit in which he has an interest at the time of planting and his interest at the time of planting in the cotton crop planted. *This report submitted by the insured shall be considered final and not subject to change by the insured.''* (Emphasis supplied.)

The acreage report form stated: ''Since the acreage which you report cannot be increased by you later, be sure to include ALL acreage of cotton in the county in which you had a share at the time of planting.   *   *   *   BEFORE YOU SIGN THIS FORM BE SURE THAT THE ACREAGE OF COTTON AND YOUR SHARE THEREIN ARE ENTERED CORRECTLY FOR EACH FARM IN THE COUNTY IN WHICH YOU SHARE A COTTON CROP.'' (Emphasis in the original.)

On the basis of DeCell's acreage report form of 39.4 acres, his lint production on Kern's Bend Farm was 8,317 pounds. Hence there was a net loss of 4,460 pounds, which at $.3295 amounted to $1,459.57.

On the basis of 78.4 acres, instead of 39.4 acres, his loss was $2,883.35.

But clearly he was bound by his acreage form. It was expressly provided in the regulations that it was not subject to change. Besides, there was no promise or agreement by the county administrative officer to correct this alleged error, even if he had the authority to do so.

■■ The Corporation maintains that it is not liable for interest, damages or costs.

Section 419.18 of the regulations provided: "When indemnity payable. The amount of loss for which the Corporation may be liable with respect to any insurance unit covered by the insurance contract shall be payable within thirty days after satisfactory proof of loss is approved by the Corporation. However, if payment of any indemnity is delayed for any reason beyond the time specified, the Corporation shall not be liable for interest or damages on account of such delay."

It is true that, in the absence of an express provision to the contrary, interest on unpaid claims cannot be recovered against the United States. U. S. v. Worley, 218 U. S. 339; Jackson v. U. S., 281 U. S. 344; U. S. v. West Point Hotel Co., 329 U. S. 585; 54 Am. Jur., United States, Section 95; 24 A. L. R. 2d 928, 983. But this general rule does not extend to a governmental corporation. National Home for D. V. S. v. Parish, 229 U. S. 494, 57 L. Ed. 1296; 54 Am. Jur., United States, Section 99; 24 A. L. R. 2d 983. A government corporation is not presumed to be clothed with the immunity of the United States. R. F. C. v. Menihan Corporation, 312 U. S. 81, 85 L. Ed. 595; Keifer and Keifer v. R. F. C., 306 U. S. 381, 83 L. Ed. 784.

In the Parish case, supra, it was said: "It is quite true that the United States cannot be subjected to the payment of interest unless there be an authorized engagement to pay it or a statute permitting its recovery. (Citations omitted.) But this exemption has never as yet been applied to subordinate governmental agencies. * * * Without now attempting to lay down a rule for all governmental agencies, we think the exemption of the United States is not applicable to the Home. It is a distinct corporate entity, invested with power, duties and responsibilities, which, in the judgment of Congress, required that it be given power to sue in its own name, and be subjected to liability to be sued."

In Standard Oil Company v. United States, 267 U. S. 76, 69 L. Ed. 519, it was said: "Some question was

made as to the allowance of interest. When the United States went into the insurance business, issued policies in familiar form, and provided that, in case of disagreement, it might be sued, it must be assumed to have accepted the ordinary incidents of suits in such business."

By paragraph (d), Section 1506, 7 U. S. C. A., the Corporation may sue and be sued. Hence it is in the same position as the government was in the Parish and Standard Oil cases, supra. Since this is true, the government has evidently accepted the ordinary incidents of suits in its insurance business. See also State Highway Commission v. Wunderlich, 194 Miss. 119, 11 So. 2d 437, and Ferguson v. Union National Bank, 126 Fed. 2d 753.

Under the above Section 419.18 of the regulations, the payment of interest is excluded on account of mere delay. But in this case, it was not mere delay. It was a default. The Corporation denied liability.

Consequently the judgment of the circuit court is affirmed. Interest at the rate of 6% per annum follows as a matter of law. Section 39, Code of 1942. Costs and damages in the sum of 5% upon the amount of the judgment are also assessed against the appellant. Section 1971, Code of 1942.

Affirmed on direct and cross appeals.

*Roberds, P. J.,* and *Hall, Kyle* and *Holmes, JJ.,* concur.