GUARANTY TRUST COMPANY OF NEW YORK

*v.*

WEST VIRGINIA TURNPIKE COMMISSION

(CC844)

Submitted January 21, 1959.    Decided March 24, 1959.

*Jackson, Kelly, Holt & O'Farrell, Robert G. Kelly, Homer A. Holt, Davis, Polk, Wardwell, Sunderland & Kiendl, William D. Tucker, Jr., E. Deane Leonard,* for plaintiff.

*Wm. T. Lively, Jr.,* for defendant.

CALHOUN, JUDGE:

This is a declaratory judgment proceeding instituted in the Circuit Court of Kanawha County by Guaranty Trust Company of New York, a corporation, against the West Virginia Turnpike Commission.

The controversy between the parties involves the question whether or not the coupons originally attached to bonds issued by the West Virginia Turnpike Commission bear interest from their respective due dates. The issue was raised by the defendant's demurrer to the petition filed by and upon behalf of the Guaranty Trust Company of New York. The lower court overruled the demurrer and held that the coupons, if not paid when due, bear interest at the rates specified in the bonds from the respective due dates thereof until paid. Thereupon, the circuit court, upon its own motion, certified to this Court its rulings upon the demurrer, in accordance with the provisions of Code, 58-5-2.

The case of *Guaranty Trust Co.* v. *West Virginia Turnpike Commission,* 109 F. Supp. 286, was a declaratory judgment proceeding involving the authority and duties of the West Virginia Turnpike Commission. In the case of *Hope Natural Gas Company* v. *West Virginia Turnpike Commission,* 143 W. Va. 913, 105 S. E. 2d 630, this Court held that the West Virginia Turnpike Commission is not such an agency of the State as to be immune from suit under Section 35, Article VI of the Constitution of West Virginia. These two cases are referred to, not only in relation to the principles of law therein adjudicated, but also because of the portrayal therein of the legal nature of the respective parties to the instant proceeding and their rights, duties and responsibilities.

Guaranty Trust Company (which is sometimes referred to herein as "Guaranty Trust" or "the Trustee") is a New York corporation, having full powers as a trust company.

The West Virginia Turnpike Commission (herein sometimes referred to as the "Turnpike Commission" or "the Commission") is an agency of the State of West

Virginia, created and established by Chapter 139 of the Acts of the Legislature of West Virginia, Regular Session, 1947, (which is sometimes referred to herein as the "Act" or the "Enabling Act").

By Section 5 of the Enabling Act the Commission is authorized and empowered "To construct, maintain, repair and operate turnpike projects", as defined by such Act, "at such locations within the state as may be determined by the commission;" to fix and collect tolls for the use by the public of turnpike projects; and to issue turnpike revenue bonds, payable solely from turnpike revenues, for the purpose of defraying the cost of turnpike projects.

By Section 10 of the Act the Commission is authorized to secure the payment of such bonds by the execution of a trust agreement with a corporate trustee, having powers of a trust company, whether within or without the State, and to pledge or assign to such trustee the tolls and other revenues received from time to time by the Commission in order to secure the payment of such bonds. By virtue of this provision the Commission entered into an appropriate written agreement with Guaranty Trust.

On March 10, 1952, a resolution was adopted by the Commission authorizing the issuance of turnpike revenue bonds of the State of West Virginia in the principal amount of $96,000,000, bearing interest at 3¾%. On March 3, 1954, the Commission authorized the issuance of additional turnpike revenue bonds in the amount of $37,000,000, bearing interest at 4⅛%. Bonds of both issues were sold and delivered to underwriters for distribution to the public. All such bonds bear interest, payable semi-annually on June 1 and December 1 of each year, such interest installments being in the form of the "bond coupons" which form the subject of the controversy in this case. Such bonds are now widely held by owners in forty-seven of the forty-nine states and in several foreign countries.

The revenues of the Commission from the operation

of the turnpike project have consistently fallen appreciably below the estimates which were made by the traffic engineers prior to the financing and construction of the turnpike project. On October 1, 1958, the Commission made payments to Guaranty Trust of an amount sufficient (when combined with moneys then in the hands of the trustee) to pay the interest installments which had previously fallen due on June 1, 1958. Moneys presently in the hands of the Trustee, coupled with anticipated revenue, will not be sufficient until approximately September 1, 1959, to enable the Trustee to pay the interest installments which became due December 1, 1958.

Except for interest rates, all the bonds, of both issues, are the same and all are secured by the same trust agreement. All the bonds issued are "coupon bonds", with provision for registration, at the election of the several owners thereof.

The Trustee asserts that interest, at the bond rates, is payable on the overdue interest installments or coupons. The Commission denies that the overdue interest installments bear interest. The Commission in this connection asserts that it is such an agency of the State as to be entitled to the immunity from payment of interest which is, with some exceptions, enjoyed by a state.

Certain propositions, which are deemed helpful in this connection, are settled by the decision of this Court in the case of *Hamilton* v. *Wheeling Public Service Co., et al.*, 88 W. Va. 573, 107 S. E. 401. Points 3, 4, and 5 of the syllabus of the *Hamilton* case are as follows:

> "The general rule is that negotiable interest coupons, attached to or detached from bonds, bear interest from and after their respective maturity dates.

> "When the interest evidenced by such a coupon has become due and payable, the demand based upon the promise contained therein is no longer a mere incident of the principal indebtedness represented by the bond, but itself becomes a principal obligation.

"But the obligor may defeat recovery of the interest so compounded by showing his continued readiness and willingness to pay the sums specified in the coupons from the date of their maturity."

Apparently recognizing the quotation immediately above as embodying sound legal principles in this jurisdiction, the Commission seeks to avoid their applicability by a reliance upon a principle of law determined in the case of *United States* v. *North Carolina,* 136 U. S. 211, 10 S. Ct. 920, 34 L. ed. 336, and other authorities to like effect. That case involved bonds payable from the state treasury of the State of North Carolina. In other words, unlike the instant case in that respect, the bonds represented direct obligations of the state itself. It was therein held that a state is not liable for payment of interest on its debts, unless its consent to do so has been manifested by an act of its legislature, or by a lawful contract of its executive officers.

Apparently counsel for both parties agree that the foregoing represents the correct rule relating to the immunity of a state from payment of interest. Counsel for Guaranty Trust asserts that, nevertheless, the rule of gevernmental immunity is not applicable to the instant situation and in that connection rely upon the following propositions: (1) The Enabling Act provides for payment of interest on overdue interest coupons and has authorized the Commission to contract to pay such interest; and (2) the Turnpike Commission does not partake of the attributes of sovereignty in such manner and to such a degree that it may enjoy immunity from liability for interest.

Both the Enabling Act and the trust agreement clearly provide for interest at least to some degree, because the coupons themselves represent installments of interest. At most, therefore, the Commission asserts only a qualified immunity from liability for interest. Also, Section 18 of the Act authorizes the Commission to provide by resolution for the issuance of turnpike revenue refunding bonds "for the purpose of refunding any bonds then out-

standing which shall have been issued under the provisions of this act, including * * * *any interest accrued or to accrue* to the date of redemption of such bonds, * * *." (Italics supplied). To this extent the Commission is specifically authorized to provide for payment of interest on accumulated interest.

The Act necessarily clothes the Commission with some discretion in order to effectuate its overall purposes. *Guaranty Trust Co.* v. *West Virginia Turnpike Commission, supra.* Section 20 of the Act provides: "This act, being necessary for the welfare of the state and its inhabitants, shall be liberally construed to effect the purposes thereof."

The Act charges the Commission with the task of financing the construction of the proposed turnpike project by the issuance and sale of turnpike revenue bonds. There was necessarily implied therein a duty to make the bonds attractive and salable on a competitive market. Such bonds, it must have been recognized, could not be made competitive and salable to a high degree if they were to be stripped of the normal attributes of bonds of this general nature.

Public revenue bonds are uniformly held to be contracts. They are measured by the standard of the laws in effect at the time they are issued. 43 Am. Jur., Public Securities and Obligations, Section 9, pp. 277-78. When the bonds in question were authorized to be placed upon the market, both the Legislature and the Commission were charged with knowledge of the then existing law of this State applying thereto. Each bond coupon is "a principal obligation". *Hamilton* v. *Wheeling Public Service Co.,* 88 W. Va. 573, 107 S. E. 401. "A past due debt, certain in amount, bears interest from the due date until paid." *Morton* v. *Godfrey Cabot,* 134 W. Va. 55, syl. 1, 63 S. E. 2d 861. By Section 9 of the Act all such bonds are "declared to have all the qualities and incidents of negotiable instruments under the negotiable instruments law of the state." Section 9 of the Act provides: "The commission shall determine the form of the bonds, including any

interest coupons to be attached thereto, * * *." The Act throughout, to a considerable degree, clothes the Commission with a latitude in the performance of its responsibility of placing upon the market bonds having such a nature of attractiveness to purchasers that the best interest of the public would be subserved thereby.

The written trust agreement entered into by and between the Commission and Guaranty Trust is quite lengthy. Each party urges certain portions thereof in support of its own contention relative to the question of whether or not the coupons are intended thereby to bear interest from their respective due dates. The portion of the agreement which in the judgment of this Court is most indicative of the intent of the parties is found in Section 802 and Section 803 of the trust agreement. Section 803 provides that "Upon the happening * * * of any event of default", as defined in the trust agreement, the Trustee may proceed to enforce the rights of the bondholders. Section 802 provides:

> "Each of the following events is hereby declared an 'event of default', that is to say: If
> "* * *
> "(b) payment of any installment of interest shall not be made within thirty (30) days after the same shall become due and payable; * * *."

> Section 803 provides further, in part:

> "In the enforcement of any remedy under this Agreement the Trustee shall be entitled to sue for, enforce payment of and receive any and all amounts then or during any default becoming, and at any time remaining, *due from the Commission for* principal, premium, *interest* or otherwise under any of the provisions of this Agreement or of the bonds and unpaid, *with interest on overdue payments* at the rate or rates of interest specified in such bonds, * * *." (Italics supplied).

This, in our judgment, constitutes an express stipulation for payment of interest on overdue interest installments, "at the rate or rates specified in such bonds."

The Turnpike Commission was created and authorized to incur a bond indebtedness for the very reason that the State itself is prohibited by Article X, Section 4 of the State Constitution from incurring such indebtedness. Bond indebtedness incurred by similar agencies of the State has been held by this Court not to obligate the State for its payment. Otherwise such bond indebtedness would be unconstitutional. *Bates* v. *State Bridge Commission,* 109 W. Va. 186, 153 S. E. 305; *State ex rel. State Road Commission* v. *O'Brien,* 140 W. Va. 114, 82 S. E. 2d 903; *State ex rel. Board of Governors of West Virginia University* v. *O'Brien,* 142 W. Va. 88, 94 S. E. 2d 446; 59 W. Va. Law Rev. 206.

Section 2 of the Act provides that the turnpike revenue bonds "shall not be deemed to constitute a debt of the state or of any political subdivision thereof or a pledge of the faith and credit of the state or of any such political subdivision, * * *." The Act throughout makes it abundantly evident that the State shall not be liable for the payment of any portion of the turnpike revenue bonds nor the interest thereon, and that the bonds shall be payable solely from the revenues of the Commission. In the nature of things, therefore, the State's non-liability being clear beyond peradventure, there is a certain incongruity in the contention that the Commission should nevertheless enjoy the State's normal immunity from liability for payment of interest. The State's non-liability for the indebtedness being clear, the basic reason for the rule of immunity is lacking.

A prospective purchaser of any of the turnpike revenue bonds entertaining any misgivings relative to their import and legal effect could look to the Act and readily determine that the State shall not be liable for their payment. Charged with knowledge of the State's non-liability and that bonds, if paid, must be paid solely from the revenues of the Commission, such a prospective purchaser would naturally conclude that, in any event, such bonds would not be curtailed in their legal nature by any sort of State immunity. The bonds being contracts, having all the characteristics of negotiable in-

struments under the laws of this State, there arises an obligation of good faith to all who have purchased them.

This Court has held that the Commission does not enjoy the State's constitutional immunity from suit. *Hope Natural Gas Company* v. *West Virginia Turnpike Commission,* 143 W. Va. 913, 105 S. E. 2d 630. Though not controlling, that decision, for the reasons therein assigned, is persuasive of the proposition that the Commission is not entitled to enjoy the State's immunity from liability for payment of interest.

In 43 Am. Jur., 524-25, Public Securities and Obligations, Section 310, it is stated: "The general rule that interest coupons attached to bonds bear interest after maturity even though there is no provision in such coupons for interest has consistently been applied in a great majority of both jurisdictions and cases to coupons attached to *public* securities and obligations issued by various political bodies. The theory of the cases is that since such coupons have all the qualities of commercial paper, they should bear interest just as does overdue negotiable paper. * * *." (Italics supplied). For additional authorities which are deemed precedents for the Commission's lack of immunity from liability for interest on the coupons of bonds issued by it, see: *Board of Com'rs of Ouray County* v. *Geer,* 108 F. 478; *Roswell Drainage District* v. *Parker,* 53 F. (2d) 793; *Rusciano* v. *State,* 110 N.Y.S. 2d 770; *C. & R. Construction Co.* v. *Commonwealth,* 334 Mass. 232, 135 N. E. 2d 539; *State Highway Commission* v. *Wunderlich,* 194 Miss. 119, 11 So. 2d 437; *National Home For Disabled Volunteer Soldiers* v. *Parrish,* 229 U. S. 494, 33 S. Ct. 944, 57 L. ed. 1296; *State* v. *Washington Toll Bridge Authority,* 8 Wash. 2d 337, 112 P. 2d 135; *Miller* v. *Robertson,* 266 U. S. 243, 45 S. Ct. 73, 69 L. ed. 265; *Broward County Port Authority* v. *Arundel Corporation,* 206 F. 2d 220; *Federal Crop Insurance Corporation* v. *De Cell,* 222 Miss. 643, 76 So. 2d 826; *Wilson* v. *County Commissioners,* 23 F. 129.

Upon the questions certified, therefore, this Court

holds that it is the right, duty and obligation of Guaranty Trust, as trustee, to pay, or to cause to be paid (but only from moneys held by it as such Trustee and available therefor) interest at the bond rates upon overdue installments of interest, whether the interest coupons are attached to or detached from the bonds to which they were originally attached, from the respective due dates thereof until the respective dates fixed by Guaranty Trust for the payment thereof, whether or not presentment of any such overdue coupon or demand for payment of any such overdue installment be made. It is the right, duty and obligation of Guaranty Trust, as trustee, to pay such overdue installments in the order in which such installments become due, as provided in Section 804 of the trust agreement; and to determine the date for payment of each overdue installment of interest according to the availability of sufficient moneys in its hands as Trustee. It is evident from the provisions of Section 802 of the trust agreement that the failure to pay the interest installments due on June 1, 1958, or within thirty days thereafter, constitutes an "event of default" under the terms of the trust agreement.

The judgment of the Circuit Court of Kanawha County in overruling the demurrer of the West Virginia Turnpike Commission to the petition of Guaranty Trust Company of New York is affirmed.

*Affirmed.*