508 S.E.2d 616

Mary HENSLEY and Sue P. Hatcher,
Petitioners Below, Appellees,

v.

WEST VIRGINIA DEPARTMENT OF
HEALTH AND HUMAN RESOURCES
and West Virginia Department of Administration/Division of Personnel, Respondents Below, Appellants.

No. 25020.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 22, 1998

Decided Oct. 2, 1998.

Darrell V. McGraw, Jr., Attorney General, Meredith A. Harron, Michelle T. Mensore, Assistant Attorneys General, Charleston, West Virginia, Attorneys for the Appellants.

Charles M. Hatcher, Jr., Huntington, West Virginia, Attorney for the Appellees.

DAVIS, Chief Justice:

The West Virginia Department of Health and Human Resources and the West Virginia Department of Administration/Division of Personnel (hereinafter collectively referred to as "the Departments"), respondents below and appellants herein, appeal from an order entered September 16, 1997, by the Circuit Court of Cabell County. In this ruling, the court determined that the petitioners below and appellees herein, Mary Hensley and Sue Hatcher, former employees of the Department of Health and Human Resources, were entitled to compound prejudgment interest at the rate of ten percent on their back pay

awards resulting from the pay differential associated with their misclassified positions of employment. The Departments contest this decision and argue that the correct computation of prejudgment interest should be simple prejudgment interest at the rate of six percent for claims accruing prior to July 5, 1981, *citing* W. Va.Code § 47–6–5(a) (1974) (Repl.Vol.1996), and ten percent for claims accruing after that date, *citing* W. Va.Code § 56–6–31 (1981) (Repl.Vol.1997). After reviewing the parties' arguments, the record in this case, and the relevant authorities, we agree with the view espoused by the Departments. Accordingly, we affirm in part, and reverse in part, the order of the circuit court. Additionally, we remand this matter to the circuit court for further proceedings consistent with this decision.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case arises from ongoing litigation, beginning in the mid–1980s, wherein certain employees of the West Virginia Division of Human Services,[1] upon learning that they had been misclassified in their employment positions,[2] sought back pay as restitution for the alleged violations of the legislative mandate, contained in W. Va.Code § 29–6–10(2) (1995) (Supp.1998),[3] requiring the Civil Service Commission to provide "equal pay for equal work." *See American Fed'n of State, County & Mun. Employees v. Civil Serv.*

Comm'n of West Virginia, 174 W.Va. 221, 324 S.E.2d 363 (1984) (hereinafter *AFSCME I* ); *American Fed'n of State, County & Mun. Employees v. CSC of W. Va.*, 176 W.Va. 73, 341 S.E.2d 693 (1985) (per curiam) (hereinafter *AFSCME II* ); *American Fed'n of State, County & Mun. Employees v. Civil Serv. Comm'n of West Virginia*, 181 W.Va. 8, 380 S.E.2d 43 (1989) (hereinafter *AFSCME IV* ).[4] While it is not clear from the record whether the particular former employees participating in this appeal, Mary Hensley and Sue Hatcher, were involved in the earlier litigation, it is not disputed that their claims similarly arose from discrepancies between the duties and salaries associated with the employment position titles in which they were employed and the duties that they actually performed, for which a properly classified employee would have received greater compensation.

With respect to this particular appeal, Hensley and Hatcher believed themselves to have been misclassified in their employment positions with the West Virginia Department of Health and Human Resources (hereinafter DHHR) and filed grievances seeking back pay commensurate with the sums they would have been paid had their positions been properly classified. In September, 1991, Level IV grievance decisions were issued declaring both former employees to have been misclassified and to be entitled to back pay and prejudgment interest "computed at the rate authorized by West Virginia statutory law."[5]

1. The Division of Human Services is housed within the West Virginia Department of Health and Human Resources. W. Va.Code § 9–2–1a (1998) (Supp.1998).

2. Within the civil service system, employment positions are arranged by classes, with all employees of a given class receiving like compensation. *See* W. Va.Code § 29–6–2(e) (1991) (Repl. Vol.1992) (defining "class" as "a group of positions sufficiently similar in duties, training, experience and responsibilities, as determined by specifications, that the same qualifications, the same title and the same schedule of compensation and benefits may be equitably applied to each position in the group").

3. The corresponding statutory provision applicable to the earlier claims accruing in the 1970s, and containing substantially the same language as the present-day statute, was W. Va.Code § 29–6–8(2) (1968) (Repl.Vol.1971).

4. In addition to these cited decisions, this Court issued a per curiam order on May 20, 1988, which is sequentially *AFSCME III*. See *American Fed'n of State, County & Mun. Employees v. Civil Serv. Comm'n of West Virginia*, No. 17929 (W.Va. May 20, 1988) (per curiam order) (hereinafter *AFSCME III* ).

5. Specifically, the parties represent that the presiding hearing examiner determined Hensley to have been misclassified from April 1, 1978, through January 31, 1978, and from February 1, 1978, through June 30, 1984. Likewise, the parties indicate that Hatcher was declared to have been misclassified from January 1, 1970, through December 31, 1974, and from July 1, 1976, through June 30, 1984.

Although the Departments had a statutory right to appeal these adverse decisions,[6] they did not seek circuit court review of the hearing examiner's rulings.

Having not received their awards of back pay and prejudgment interest, Hensley and Hatcher filed a petition for writ of mandamus in the Cabell County Circuit Court on July 8, 1992, seeking such remuneration. In their petition, they alleged that the Departments had paid other misclassified employees compound prejudgment interest at the annual rate of ten percent, and requested the court to compel the Departments to also pay them compound prejudgment interest, as opposed to simple prejudgment interest. The former employees argued that if the Departments did not pay them compound prejudgment interest, such a failure to do so would constitute an additional violation of the "equal pay for equal work" doctrine. The Departments answered and denied that Hensley and Hatcher were entitled to compound prejudgment interest. Although the Departments admitted having resolved the claims of a few [7] of the other misclassified employees by paying them ten percent compound prejudgment interest, they indicated that such payments had been isolated and in error and that these miscalculations had not been perpetuated.

On August 10, 1993, the circuit court entered an agreed order wherein the Departments consented to

> pay unto the Petitioners [Hensley and Hatcher] the amount of back pay, together with interest the Respondents [Departments] believe the Petitioners are owing through August 31, 1993, which payment does not prohibit or prejudice the Petitioners from raising all issues hereto deemed in controversy, including, but not limited to the calculation of back pay and interest thereon[.]

The parties indicate that, following the entry of this order, an informal, unrecorded hearing took place, on September 8, 1993, during which the circuit court allegedly ordered the Departments to pay Hensley and Hatcher compound prejudgment interest at the rate of ten percent on their awards of back pay. As is evidenced by the transcript of a subsequent hearing, the circuit court, on September 8, 1993, apparently also directed the attorney representing the former employees to facilitate the drafting and entry of the order memorializing this ruling. No further action was taken in this case until the parties appeared at a status conference on June 17, 1997.

Following this status hearing, the circuit court entered, on September 16, 1997, the order which is the subject of this appeal. Acknowledging that the Departments had paid Hensley and Hatcher the amounts of back pay occasioned by their misclassifications, the court proceeded to determine the rate and type of prejudgment interest the Departments would be required to pay on these back pay awards. The court ordered

> [t]hat the calculation of the interest on the Petitioners' [Hensley's and Hatcher's] back pay award is to be at the rate of 10 percent compounded interest upon the grounds that pre-judgment interest, according to West Virginia Code 56–3–31 and the decisions of the West Virginia Supreme Court interpreting that Statute, is not a cost but a form of compensatory damages intended to make an injured party whole as far as loss of use of funds is concerned. As such, back pay is special damages, which was the loss of use of income for several years by the Petitioners and calculating their back pay award with simple interest does not make them whole. BUCKHANNON–UPSHUR CTY. AIRPORT [AUTH.] V. R & R COAL [CONTRACTING, INC., 186 W.Va. 583,] 413 S.E.2d 404 (W.V.1991).

From this order, the Departments appeal to this Court. We therefore commence to evaluate the legal sufficiency of the parties' arguments.

---

**6.** W. Va.Code § 29–6A–7 (1988) (Repl.Vol.1992) indicates that "either party ... may appeal [the hearing examiner's decision] to the circuit court of the county in which the grievance occurred."

**7.** During oral argument, counsel for the Departments estimated that approximately five employees inadvertently received compound prejudgment interest on their back pay awards.

## II.

### DISCUSSION

The primary issues controverted in this appeal concern the rate and type of prejudgment interest awarded to Hensley and Hatcher on their awards of back pay. Neither party disputes the propriety of an award of prejudgment interest under the facts and circumstances underlying this appeal. However, both the Departments and their former employees dispute the type of prejudgment interest that is appropriate in this case and the percentage rate at which such prejudgment interest should be calculated. Following a discussion of the applicable standard of review, we will address the Departments' assignments of error.

### A. Standard of Review

Procedurally, this case is before us on appeal from the circuit court's rulings which effectively granted Hensley and Hatcher relief through the extraordinary writ of mandamus by facilitating the Departments' payment, and the former employees' receipt, of the back pay amounts awarded by the Level IV hearing examiner. " ' "The standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is de novo." Syllabus Point 1, *Staten v. Dean*, 195 W.Va. 57, 464 S.E.2d 576 (1995).' Syllabus point 1, *O'Daniels v. City of Charleston*, 200 W.Va. 711, 490 S.E.2d 800 (1997)." Syl. pt. 1, *Ewing v. Board of Educ. of Summers County*, 202 W.Va. 228, 503 S.E.2d 541 (1998). Thus, when reviewing a circuit court's decision to grant such relief, we look to the circumstances surrounding the writ of mandamus to determine if the facts before the court supported the award. In determining the propriety of mandamus relief, we ordinarily have held that

> " '[a] writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.' Syllabus Point 1, *State ex rel. Billy Ray C. v.*

*Skaff*, 190 W.Va. 504, 438 S.E.2d 847 (1993); Syllabus Point 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969)." Syllabus point 2, *Staten v. Dean*, 195 W.Va. 57, 464 S.E.2d 576 (1995).

Syl. pt. 2, *Ewing*, 202 W.Va. 228, 503 S.E.2d 541.

Neither of the parties to this appeal contest the propriety of the circuit court's award of mandamus relief. Looking to the facts surrounding Hensley's and Hatcher's petition for writ of mandamus in July, 1992, we similarly conclude that the circumstances presented to the circuit court clearly suggested the propriety of such relief. First, Hensley and Hatcher had a clear legal right to the relief which they sought. Pursuant to the 1991 grievance decisions, both former employees were found to be entitled to back pay with prejudgment interest for the financial losses they incurred as a result of their misclassified employment statuses. In these decisions, the Departments were declared to be the party owing such sums to the former employees and, while the Departments had a right to appeal these rulings to the circuit court, they failed to do so. *See* W. Va.Code § 29–6A–7 (1988) (Repl.Vol.1992) (allowing either party to appeal an adverse grievance decision). Furthermore, W. Va.Code § 29–6A–4(d)(2) (1988) (Repl.Vol.1992) and § 29–6A–7 (1988) (Repl.Vol.1992) permit a prevailing party to seek the enforcement of grievance orders in the appropriate circuit court, and W. Va.Code § 29–6A–9 (1988) (Repl.Vol. 1992) authorizes a grieved employee to file in the circuit court a petition for writ of mandamus to compel his/her employer's compliance with the designated grievance procedures. Thus, it is apparent that Hensley and Hatcher were legally entitled to mandamus relief.

Second, the Departments had a legal duty to pay to their misclassified former employees back pay, complete with prejudgment interest thereon. This duty to compensate former employees for the disparity between the wages actually received by them and the wages they should have received had they been properly classified commensurate with the duties which they were actually performing is twofold. Generally, this Court's prior

decisions in the *AFSCME* cases have, in no uncertain terms, required the Departments to remedy their problematic classification decisions, and consequent inaccurate wage calculations, by paying to those misclassified employees the additional sums they would have earned but for their misclassifications.[8] Specifically, the Level IV hearing examiner ruled, with respect to the two former employees presently before this Court, that the Departments were obligated to correct the erroneous wage payments by paying them back pay equal to the difference between their actual earnings and their expected earnings at the proper classifications, with prejudgment interest calculated and tendered thereon. Hence, the Departments had a legal duty to do those acts, the performance of which their former employees sought to compel.

Finally, there existed no other adequate remedies to redress the former employees' injuries. The aggrieved employees, Hensley and Hatcher, successfully pursued their grievances and were awarded back pay with prejudgment interest by the Level IV hearing examiner. Both W. Va.Code § 29–6A–4(d)(2) and § 29–6A–7 specifically direct that such grievance decisions are "enforceable in circuit court." In this vein, we previously have held that " '[m]andamus is a proper remedy to require the performance of a nondiscretionary duty by various governmental agencies or bodies.' Syllabus, point 1, *State ex rel. Allstate Insurance Co. v. Union Public Service District*, 151 W.Va. 207, 151 S.E.2d 102 (1966)." Syl. pt. 6, *State ex rel. Anderson v. Board of Educ. of Mingo County*, 160 W.Va. 208, 233 S.E.2d 703 (1977). As the Departments possessed no discretion as to whether they owed and would have to pay to their employees back pay and prejudgment interest since this matter had been

finally determined by the hearing examiner, mandamus was the appropriate remedy to redress Hensley's and Hatcher's inability to otherwise collect their rightful awards. Moreover, W. Va.Code § 29–6A–9 expressly designates mandamus as the route by which an aggrieved employee may seek his/her employer's compliance with the statutory grievance procedures. Thus, the circumstances of this case afforded Hensley and Hatcher no other adequate legal remedy, apart from mandamus, by which to compel the enforcement of their back pay awards.

 Despite the propriety of the circuit court's decision to grant Hensley and Hatcher relief in mandamus to enforce their back pay awards, our inquiry as to the appropriate standard of review applicable to the facts before us does not end here. In addition to resolving the initial inquiry of whether mandamus relief was correctly awarded below, we must also discern whether the actual relief awarded by the circuit court was proper. Accordingly, we must look directly to the substance of the circuit court's order, the primary focus of which was the award of prejudgment interest, to determine whether the circuit court correctly calculated the type and rate of the prejudgment interest awarded to the former employees. "In reviewing a circuit court's award of prejudgment interest, we usually apply an abuse of discretion standard." *Gribben v. Kirk*, 195 W.Va. 488, 500, 466 S.E.2d 147, 159 (1995) (citation omitted). "Under the abuse of discretion standard, we will not disturb a circuit court's decision unless the circuit court makes a clear error of judgment or exceeds the bounds of permissible choices in the circumstances." *Id.* When, however, a circuit court's award of prejudgment interest "hinges, in part, on an interpretation of our decisional or statutory law,

---

**8.** *See* Syl. pt. 2, *AFSCME I*, 174 W.Va. 221, 324 S.E.2d 363 (1984) ("Where employees of the Department of Human Services of West Virginia were classified for purposes of civil service as Economic Service Worker I or II, and the work performed by those employees was not distinguished by the Department of Human Services from the work performed by an Economic Service Worker III (a higher salaried position), such employees were entitled to the difference in compensation between their Economic Service Worker I or II classifications and the Economic

Service Worker III classification."). *See also* Syl. pt. 1, *AFSCME IV*, 181 W.Va. 8, 380 S.E.2d 43 (1989) ("To the extent that the Civil Service Commission back pay policy promulgated on July 20, 1988, imposes retroactive deadlines, and thereby deprives otherwise qualified employees of full back pay, it is in direct conflict with *AFSCME v. Civil Service Comm'n*, 176 W.Va. 73, 341 S.E.2d 693 (1985) [ (per curiam) ] [*AFSCME II* ], and *AFSCME v. Civil Service Comm'n*, No. 17929 (W.Va.5/20/88) (per curiam order) [*AFSCME III* ], and is void.").

we review *de novo* that portion of the analysis." *Id.* With this recitation of the applicable standards of review, we shift our focus to the merits of the parties' contentions.

### B. Applicable annual percentage rate of prejudgment interest

■ The Departments first challenge that portion of the circuit court's order fixing the annual percentage rate of prejudgment interest at ten percent. Instead, they argue prejudgment interest should have been calculated at the annual rate of six percent for claims accruing before July 5, 1981, *citing* W. Va. Code § 47–6–5(a) (1974) (Repl.Vol.1996),[9] and at the annual rate of ten percent for claims accruing on or after July 5, 1981, *citing* W. Va.Code § 56–6–31 (1981) (Repl.Vol. 1997).[10] *See also* Syl. pt. 7, *Bell v. Inland Mut. Ins. Co.*, 175 W.Va. 165, 332 S.E.2d 127 (1985) ("Prejudgment interest accruing on amounts as provided by law prior to July 5, 1981, is to be calculated at a maximum annual rate of six percent under *W. Va.Code*, 47–6–5(a) [1974], and thereafter, at a maximum annual rate of ten percent in accordance with the provisions of *W. Va.Code*, 56–6–31 [1981].").

Former employees Hensley and Hatcher respond that the circuit court's award of

prejudgment interest at the rate of ten percent per year was not erroneous. In this regard they urge that the precise calculation of prejudgment interest is within the sound discretion of the trial court. *Citing Grove by and through Grove v. Myers*, 181 W.Va. 342, 382 S.E.2d 536 (1989). Thus,

> [i]n awarding prejudgment interest it is appropriate for the Court to allow prejudgment interest at such a rate as will compensate Plaintiffs [here, the petitioners below] for the delay in the receipt of their money.... For interest is to be computed not at the legal rate fixed by statute, but at the rate Plaintiffs [here, the petitioners below] would have to pay upon a loan of a similar amount.

*Employer–Teamsters Joint Council No. 84, Health & Welfare Fund v. Weatherall Concrete, Inc.*, 468 F.Supp. 1167, 1171 (S.D.W.Va.1979) (citation omitted).

As we have noted above, the primary source of contention between the parties centers not upon whether prejudgment interest is appropriate in this case. Indeed, the parties do not dispute Hensley's and Hatcher's entitlement to recover prejudgment interest on their awards of back pay, and this Court expressly has recognized that prejudgment

---

**9.** W. Va.Code § 47–6–5(a) (1974) (Repl.Vol. 1996), defining legal interest, provides, in pertinent part: "[e]xcept in cases where it is otherwise specially provided by law, legal interest shall continue to be at the rate of six dollars upon one hundred dollars for a year, and proportionately for a greater or less sum, or for a longer or shorter time...." The relevant portion of the prior version of § 47–6–5(a), which is applicable to Hensley's and Hatcher's earlier back pay claims, contains the same language as does the provision's current version. *See* W. Va.Code § 47–6–5 (1968) (1968 Acts of the West Virginia Legislature, Second Extraordinary Session, ch. 6).

**10.** W. Va.Code § 56–6–31 (1981) (Repl.Vol.1997) directs:

> Except where it is otherwise provided by law, every judgment or decree for the payment of money entered by any court of this State shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not: Provided, that if the judgment or decree, or any part thereof, is for special damages, as defined below, or for liquidated damages, the amount of such special or liquidated damages shall bear interest from the date the right to bring the same shall

have accrued, as determined by the court. Special damages includes lost wages and income, medical expenses, damages to tangible personal property, and similar out-of-pocket expenditures, as determined by the court. The rate of interest shall be ten dollars upon one hundred dollars per annum, and proportionately for a greater or lesser sum, or for a longer or shorter time, notwithstanding any other provisions of law.

The previous enactment of W. Va.Code § 56–6–31, which is applicable to the former employees' earlier accruing claims for back pay, differs substantially in its terminology from the above-quoted current version of this statute. *Cf.* W. Va.Code § 56–6–31 (1923) (Main Vol.1966) ("Every judgment or decree for the payment of money, except where it is otherwise provided by law, shall bear interest from the date thereof, whether it be so stated in the judgment or decree or not."). Despite the absence, in the earlier statute, of specific language permitting the recovery of prejudgment interest in cases involving special damages, though, the parties do not dispute Hensley's and Hatcher's entitlement to prejudgment interest on the entirety of their back pay awards, including those portions governed by the prior version of § 56–6–31. Thus, we need not further consider this matter.

interest is appropriate upon back pay awards. *See, e.g., Gribben v. Kirk,* 195 W.Va. 488, 466 S.E.2d 147 (1995); *Weimer–Godwin v. Board of Educ. of Upshur County,* 179 W.Va. 423, 369 S.E.2d 726 (1988). In this regard, W. Va.Code § 56–6–31 specifically requires an award of prejudgment interest upon a finding of "special damages," which include, in relevant part, "lost wages and income." *See* Syl. pt. 1, in part, *Grove by and through Grove v. Myers,* 181 W.Va. 342, 382 S.E.2d 536 (1989) ("Under *W. Va.Code,* 56–6–31, as amended, prejudgment interest on special or liquidated damages is recoverable as a matter of law. . . ."). *See also* Syl. pt. 4, *Gribben v. Kirk,* 195 W.Va. 488, 466 S.E.2d 147 ("In cases of 'special damages,' prejudgment interest must be granted as a matter of right.").

Although, as we explained in *Gribben,* back pay is not precisely equivalent to "lost wages and income," recompense for both types of losses serve the same basic purpose: to place the injured party in the financial position he/she would have enjoyed had he/she not been deprived of his/her income, either in part or in whole. 195 W.Va. at 501, 466 S.E.2d at 160 (citations omitted). *See also* Syl. pt. 1, *Buckhannon–Upshur County Airport Auth. v. R & R Coal Contracting, Inc.,* 186 W.Va. 583, 413 S.E.2d 404 (1991) ("Prejudgment interest, according to West Virginia Code § 56–6–31 (1981) and the decisions of this Court interpreting that statute, is not a cost, but is a form of compensatory damages intended to make an injured plaintiff whole as far as loss of use of funds is concerned."); *Grove,* 181 W.Va. at 350, 382 S.E.2d at 544 ("[P]rejudgment interest is to be recovered as an element of compensatory damages where there is an ascertainable pecuniary loss. This theory of recovery is, thus, essentially that of restitution." (internal reference omitted)). Given our precedential allowance of prejudgment interest upon

awards of back pay and the statutory mandate therefor contained in § 56–6–31, we find that the circuit court's initial decision to award prejudgment interest upon these awards did not constitute an abuse of its discretion.

While an award of prejudgment interest is appropriate in connection with an award of back pay, we cannot agree with the circuit court's decision to award prejudgment interest upon the former employees' back pay awards at the rate of ten percent per annum. Nowhere can we find either statutory or decisional support to authorize the calculation of prejudgment interest at a rate of ten percent on an entire award of back pay where the claims for portions of this award accrued at a time prior to the legislative authorization of the ten percent interest rate. Addressing a similar situation in *Bell v. Inland Mutual Insurance Co.,* 175 W.Va. 165, 332 S.E.2d 127 (1985), we scrutinized the law of this State authorizing prejudgment interest and examined the numerical percentages of interest applicable to damages awards arising both before and after the latest version of W. Va.Code § 56–6–31 became effective on July 5, 1981. Prior to July 5, 1981, § 56–6–31 simply allowed interest upon judgments, *i.e.,* postjudgment interest, without establishing a percentage rate at which such interest should be calculated; after that date, § 56–6–31 definitely fixed a rate of ten percent per year as the interest rate applicable to calculations of both pre- and postjudgment interest. 175 W.Va. at 175–76, 332 S.E.2d at 137–38.

■ In our earlier decision, we appreciated the fact that it would be unfair to impose a rate of prejudgment interest upon a nonprevailing party greater than the allowable legal rate of interest in effect at the time the claim accrued upon which such prejudgment interest is to be awarded.[11] 175 W.Va. at

---

11. The "legal rate of interest" is that rate which may be charged, or which is impliedly applicable, to financial transactions upon which interest is normally assessed, in which the parties have not entered into a written agreement as to the applicable interest rate, and for which no other law fixes the applicable rate of interest. *See* W. Va.Code § 47–6–5(a) (1974) (Repl.Vol.1996) ("Except in cases where it is otherwise specially provided by law, legal interest shall continue to be at the rate of six dollars upon one hundred dollars for a year, and proportionately for a greater or less sum, or for a longer or shorter time, and no person upon any contract other than a contract in writing shall take for the loan or forbearance of money, or other thing, above the value of such rate. . . ."). *But see* 10B Michie's Jurisprudence *Interest* § 2, at 393 (Repl.

176, 332 S.E.2d at 138 ("It is a general rule ... that if the statutory rate is changed after the cause of action accrues, the interest should be allowed at the old rate before, and at the new after, the altering enactment takes effect." (internal quotations and citations omitted)). Given the silence of § 56–6–31 as to an allowable rate of interest prior to its 1981 amendments, we established that the applicable rate of prejudgment interest for those claims accruing prior to July 5, 1981, is six percent per annum, consistent with the rate of legal interest permissible in the absence of a specific agreement to the contrary. *See* W. Va.Code § 47–6–5(a). For those claims accruing on or after the effective date of the statutory amendments, the percentage rate of prejudgment interest is ten percent. *See* W. Va.Code § 56–6–31. Accordingly, we held:

> Prejudgment interest accruing on amounts as provided by law prior to July 5, 1981, is to be calculated at a maximum annual rate of six percent under *W. Va. Code,* 47–6–5(a) [1974], and thereafter, at a maximum annual rate of ten percent in accordance with the provisions of *W. Va. Code,* 56–6–31 [1981].

Syl. pt. 7, *Bell,* 175 W.Va. 165, 332 S.E.2d 127.

Thus, with respect to the instant appeal, we believe it would be both unlawful and unfair to require the Departments to pay to Hensley and Hatcher prejudgment interest on their pre-July 5, 1981, back pay awards at a rate exceeding the then-maximum permissible interest rate chargeable between parties without an agreement or statute definitely fixing the applicable interest rate.

Therefore, we find that the circuit court abused its discretion in awarding prejudgment interest at a rate of ten percent upon the former employees' back pay awards *in toto.* Consistent with our prior decisions, we determine the appropriate rates of prejudgment interest to be six percent for those claims to back pay accruing before July 5, 1981, and ten percent for those claims accruing on or after July 5, 1981. In accordance with this ruling, we reverse that portion of the circuit court's order awarding Hensley and Hatcher prejudgment interest at the rate of ten percent for their back pay claims accruing before July 5, 1981. We further affirm that portion of the circuit court's order awarding prejudgment interest at the rate of ten percent for the back pay claims of Hensley and Hatcher accruing on or after the aforementioned date. In order to implement our decision in this regard, we additionally remand this case to the circuit court for further proceedings consistent herewith.

### C. Availability of compound prejudgment interest

■ The Departments' second assignment of error concerns the type of prejudgment interest awarded by the circuit court. In its order granting Hensley and Hatcher prejudgment interest at the rate of ten percent per year, the circuit court also declared that the prejudgment interest should be compounded. The Departments object to the compounding of the prejudgment interest at issue in this case and urge this Court to find, instead, that the law of this State authorizes only simple prejudgment interest.[12]

In support of their argument, the Departments first assert that no cases and no stat-

---

Vol.1995) (" 'Legal interest' is that rate of interest prescribed by the laws of the particular state or country as the highest which may lawfully be contracted for or exacted, and which must be paid in all cases where the law allows interest without the assent of the debtor." (*citing* Black's Law Dictionary 894 (6th ed.1990)) (footnote omitted)). In other words, the "legal rate of interest" is the maximum percentage rate of interest that may be charged for the use of money, unless either the parties to the transaction have specifically agreed, in writing, to adopt a higher percentage rate or the applicable law specifically provides otherwise. *See, e.g.,* W. Va.Code § 56–6–31 (1981) (Repl.Vol.1997) (fixing interest rate

for pre- and postjudgment interest at ten percent per year).

12. Compound interest is "interest upon interest, where accrued interest is added to the principal sum, and the whole treated as a new principal, for the calculation of the interest for the next period." 10B Michie's Jurisprudence *Interest* § 2, at 393 (footnote omitted). By contrast, simple interest is interest "which is paid for the principal or sum lent, at a certain rate or allowance, made by law or agreement of parties." *Id.* (footnote omitted). By definition, simple interest does not contemplate the payment of interest upon interest.

utes in the law of this State indicate that prejudgment interest should be compound as opposed to simple. Additionally, even if W. Va.Code § 56–6–31 may be construed as permitting compound prejudgment interest, an interpretation espoused by the circuit court and adopted by Hensley and Hatcher, the Departments urge that such a statute, which is in derogation of the common law's disallowance of compound interest, should be strictly construed to effectuate only the narrow purpose intended by the legislature. *Citing Teter v. Old Colony Co.,* 190 W.Va. 711, 724, 441 S.E.2d 728, 741 (1994) ("Statutes in derogation of the common law are allowed effect only to the extent clearly indicated by the terms used. Nothing can be added otherwise than by necessary implication arising from such terms." (citations omitted)). *See also Cherokee Nation v. United States,* 270 U.S. 476, 490, 46 S.Ct. 428, 433–34, 70 L.Ed. 694, 700 (1926) ("The general rule even as between private persons is that in the absence of a contract therefor or some statute, compound interest is not allowed to be computed upon a debt." (citations omitted)); *Hamilton v. Wheeling Pub. Serv. Co.,* 88 W.Va. 573, 578, 107 S.E. 401, 403 (1921) ("The rule generally recognized and followed in this state undoubtedly is that interest should not bear interest." (citations omitted)). As this section does not specifically authorize the compounding of prejudgment interest, the circuit court erred by holding that such prejudgment interest could be compounded.

Finally, the Departments dispute the circuit court's ruling that only compound prejudgment interest will "make whole" Hensley and Hatcher. In this regard, the Departments suggest there is no authority in this State to support the circuit court's conclusion that their former employees cannot be made

whole unless they are paid compound interest. They also reject the circuit court's reliance on this Court's decision in *Buckhannon–Upshur County Airport Authority v. R & R Coal Contracting, Inc.,* 186 W.Va. 583, 413 S.E.2d 404, stating that this opinion does not address the issues of the case *sub judice.* While the Court, in Syllabus point 1 of *R & R Coal,* did indicate that § 56–6–31 "[p]rejudgment interest ... is not a cost, but is a form of compensatory damages intended to make an injured plaintiff whole as far as loss of use of funds is concerned," *id.,* the Court did not, as proposed by the circuit court and Hensley and Hatcher, conclude that only compound prejudgment interest would fully satisfy the plaintiff's damages in that case.

Replying to the Departments' arguments, Hensley and Hatcher suggest that, pursuant to W. Va.Code §§ 56–6–27 (1923) (Repl.Vol. 1997) [13] and 56–6–29 (1923) (Repl.Vol.1997),[14] they are entitled to compound prejudgment interest. Scrutinizing the precise language of these two statutes, the former employees represent that neither provision specifically delineates that prejudgment interest is intended to be limited to simple interest. In fact, they argue, this Court, in *Douglass v. McCoy,* specifically noted that W. Va.Code § 56–6–29 "makes a radical change in the law and expressly allows interest on interest, or compound interest, which was before illegal." 24 W.Va. 722, 728 (1884).

The former employees also suggest that they are entitled to compound interest in order that they be made whole following their misclassifications and consequent inadequate salaries. This Court noted, in another back pay case, *Gribben v. Kirk,* that although an award of back pay and an award of damages are not synonymous, the goal of both "is

---

**13.** W. Va.Code § 56–6–27 (1923) (Repl.Vol.1997) states:

The jury, in any action founded on contract, may allow interest on the principal due, or any part thereof, and in all cases they shall find the aggregate of principal and interest due at the time of the trial, after allowing all proper credits, payments and sets-off; and judgment shall be entered for such aggregate with interest from the date of the verdict.

**14.** W. Va.Code § 56–6–29 (1923) (Repl.Vol.1997) requires, *in pertinent part:*

When there is a recovery on a bond conditioned for the payment of money, as well as in all cases where a judgment or decree is rendered or made for the payment of money, it shall be for the aggregate of principal and interest due at the date of the verdict, if there be one, otherwise at the date of the judgment or decree, with interest thereon from the date of such verdict, if there be one, otherwise from the date of such judgment or decree, except in cases where it is otherwise provided....

to place the prevailing parties in the same position as they would have been had they not been deprived of the sum owed them and had benefitted from full use of the money during the period of deprivation." 195 W.Va. at 501, 466 S.E.2d at 160 (citations omitted). In this vein, Hensley and Hatcher contend that prejudgment interest is an essential part of a back pay award in that it "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." *West Virginia v. United States*, 479 U.S. 305, 310–11 n. 2, 107 S.Ct. 702, 706 n. 2, 93 L.Ed.2d 639, 646 n. 2 (1987) (citation omitted). Thus, because they lost the use of the difference between their actual salaries and their correct salaries during the various periods of misclassification, the former employees urge that they should now be permitted to recover compound prejudgment interest to ensure that they are "made whole" by their back pay awards.[15]

■ The second source of disagreement between the parties consists of the type of prejudgment interest to which Hensley and Hatcher are entitled: simple or compound. Generally speaking, compound interest is disfavored in the law. "The rule generally recognized and followed in this state undoubtedly is that interest should not bear interest." *Hamilton v. Wheeling Pub. Serv. Co.*, 88 W.Va. 573, 578, 107 S.E. 401, 403 (1921) (citations omitted). *See also* 10B Michie's Jurisprudence *Interest* § 10, at 410 (Repl. Vol.1995) ("The general rule of law is that interest should not bear interest." (footnote omitted)). Thus, few are the occasions on which compound interest is recoverable upon a damages award. For example, "it has been held than an agreement to pay compound interest is valid if made after the interest which is to bear interest has become due and payable." *Hamilton*, 88 W.Va. at 578, 107 S.E. at 403 (citations omitted). In addition, "interest on judgments and decrees may properly be awarded even where such judgments and decrees themselves include the principal and interest theretofore accrued."[16] *Id. See, e.g.*, W. Va.Code §§ 56–6–27, 56–6–29, and 56–6–31. Furthermore, "compound interest may be awarded if authorized by statute." 45 Am.Jur.2d *Interest and Usury* § 76, at 69 (1969) (footnote omitted). *See, e.g.*, W. Va.Code §§ 56–6–27, 56–6–29, and 56–6–31.[17] Given the very limited and specific instances in which compound interest is recoverable and considering the facts of the case *sub judice*, we are unable to find the existence of any of those criteria which would specifically permit the recovery of compound

---

**15.** The former employees further contend that their claims for back pay are similar to cases decided within the federal court system, wherein they represent, compound prejudgment interest is routinely awarded. *Citing* 28 U.S.C. § 1961(a–b) (1992) (1994 ed. & Supp. II 1996) ("(a) Interest shall be allowed on any money judgment in a civil case recovered in a district court.... (b) Interest shall be computed daily to the date of payment ..., and shall be compounded annually."). For two reasons, we find reliance upon federal law to be misplaced in this instance. First, the federal system has a specific statute which expressly authorizes the recovery of compound interest. *See id.* The law of this State contains no such provision, either statutory or judicial, establishing the precise manner by which interest is to be calculated. Second, the above-cited statute permits the recovery of compound *postjudgment* interest. As the controversy of the case *sub judice* involves *prejudgment* interest, as opposed to *postjudgment* interest, we remain unpersuaded by the inapposite federal law.

**16.** It should be noted that although postjudgment interest, the recovery of which is expressly authorized by statute, see W. Va.Code § 56–6–31, resembles compound interest, postjudgment interest is not true compound interest. Rather, postjudgment interest may more accurately be described as interest which accrues upon a judgment, the components of which are the principal debt and prejudgment interest, if any, which has accrued on such principal. *See* 45 Am.Jur.2d *Interest and Usury* § 78, at 71 (1969) ("[C]ompound interest may in effect be recovered on a judgment whereby the aggregate amount of principal and interest is turned into a new principal...." (footnote omitted)).

**17.** For additional examples of circumstances in which compound interest has been allowed, but which are not relevant to the facts of the instant appeal, see 45 Am.Jur.2d *Interest and Usury* §§ 79 (involving settlement of accounts), 80 (regarding fiduciaries), 81 (pertaining to executors and administrators), 82 (concerning guardians), and 83, 85, and 86 (relating to overdue or matured installments of interest owing pursuant to terms of note, contract, or bond) (1969).

prejudgment interest by Hensley and Hatcher.

■ First, the record contains no evidence of an agreement between the Departments and Hensley and Hatcher whereby the parties assented that the prejudgment interest owing on the back pay awards should be compound. Although the former employees have alluded to the existence of such a contract, we can find no concrete evidence that such an agreement was, in fact, reached. Under these circumstances, we are constrained to corral our decision of this case within the confines of the record presented to us for appellate review. "It is axiomatic that this Court 'can consider *only those matters in the record* in determining whether the court abused its discretion.'" *Bell,* 175 W.Va. at 175, 332 S.E.2d at 136 (emphasis added) (*quoting Evans v. Huntington Publishing Co.,* 168 W.Va. 222, 224, 283 S.E.2d 854, 855 (1981) (per curiam)) (additional citations omitted). Thus, on the basis of the record presently before this Court, we find that no contract or private agreement between the parties authorized the compounding of prejudgment interest on the former employees' back pay awards.

Second, interest akin to compound interest may be awarded upon a judgment which is comprised of both the underlying debt and prejudgment interest which has accrued thereon. That compound interest may be awarded and recovered under such circumstances is not disputed in the law of this State. *See, e.g.,* W. Va.Code § 56-6-31; *Douglass v. McCoy,* 24 W.Va. 722, 727-28 (1884). However, neither is the recovery of postjudgment interest of a compound nature a source of contention between the parties to the appeal presented to us for resolution. As neither party has raised the issue of whether compound *postjudgment* interest is lawful and available to a prevailing party, we decline further to address this matter.

Third, we are unable to locate any legislative, statutory authority which either explicitly designates prejudgment interest as being simple or compound or from which we can discern a legislative intent to permit the recovery of compound prejudgment interest. In the absence of express statutory authority and in consideration of the general reluctance with which compound interest is awarded, we are obliged to construe the statutory provision authorizing the recovery of prejudgment interest, W. Va.Code § 56-6-31, consistently with the common law as manifesting a legislative intent that prejudgment interest be simple, and not compound, in nature. *See* Syl. pt. 5, *Holsten v. Massey,* 200 W.Va. 775, 490 S.E.2d 864 (1997) ("'One of the axioms of statutory construction is that a statute will be read in context with the common law unless it clearly appears from the statute that the purpose of the statute was to change the common law.' Syl. pt. 2, *Smith v. West Virginia State Board of Education,* 170 W.Va. 593, 295 S.E.2d 680 (1982)."); Syl. pt. 4, *State ex rel. Van Nguyen v. Berger,* 199 W.Va. 71, 483 S.E.2d 71 (1996) ("'"The common law is not to be construed as altered or changed by statute, unless legislative intent to do so be plainly manifested." *Shifflette v. Lilly,* 130 W.Va. 297[, 43 S.E.2d 289 (1947) ].' Syllabus Point 4, *Seagraves v. Legg,* 147 W.Va. 331, 127 S.E.2d 605 (1962).").[18]

■ Accordingly, we hold that, where there exists no statute or express written

18. Although this Court has specifically authorized the recovery of compound interest, consistent with a statute abrogating the common law, such recovery was limited, under the facts of that decision, to the recovery of compound *postjudgment* interest, and did not address the question of the recoverability of compound *prejudgment* interest at issue in the instant appeal. *See Douglass v. McCoy,* 24 W.Va. 722, 728 (1884) (interpreting W. Va.Code § 56-6-29). We note also that our interpretation of W. Va.Code § 56-6-31, which authorizes the recovery of prejudgment interest in certain, enumerated circumstances but which fails to indicate whether such interest is simple or compound, is consistent with the view espoused by other jurisdictions in which prejudgment interest is expressly authorized by statute but where the law is silent as to whether such interest is of the simple or compound variety. A summary survey of the law of our sister jurisdictions indicates that the decision we have rendered today is consistent with the interpretations reached by the courts of at least five other states interpreting their own prejudgment interest statutes. *See, e.g., Doolittle by and through Doolittle v. Meridian Joint Sch. Dist. No. 2,* 128 Idaho 805, 919 P.2d 334 (1996) (considering Idaho Code § 28-22-104); *Landals v. George A. Rolfes Co.,* 454 N.W.2d 891 (Iowa 1990) (reading Iowa Code Ann. § 535.3); *Metropolitan Property & Liab. Ins. Co. v. Ralph,* 138 N.H. 378, 640 A.2d 763 (1994) (construing N.H.Rev.Stat. Ann.

agreement establishing the type of prejudgment interest as being compound, and in the absence of a recognized exception which would permit the recovery of compound prejudgment interest, prejudgment interest is simple in kind. Therefore, we reverse that portion of the circuit court's order authorizing the award of compound prejudgment interest and remand this case to the circuit court for further proceedings consistent with this decision.[19]

## III.

## CONCLUSION

For the reasons detailed in the above-rendered decision of this Court, we conclude that prejudgment interest is to be calculated at the rate of six percent per year for those claims, upon which prejudgment interest may be awarded, accruing prior to July 5, 1981, and at the annual rate of ten percent for claims accruing on or after that date. We further find that, unless a statute, express written agreement of the parties, or another recognized exception specifically dictates that prejudgment interest is to be compound in nature, prejudgment interest is of the simple type. Thus, we affirm in part, and reverse in part, the order of the Circuit Court of Cabell County. We further remand this matter to the circuit court for further proceedings consistent with this decision.

§§ 336:1, 524:1–b); *Burwell v. Oklahoma Farm Bureau Mut. Ins. Co.*, 896 P.2d 1195 (Okla.Ct. App.1995) (interpreting Okla. Stat. Ann. tit. 12, § 727); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439 (Tenn.1992) (applying Tenn.Code Ann. § 47–14–123). *Cf. Fire Ins. Exch. v. Adamson Motors*, 514 N.W.2d 807 (Minn.Ct.App.1994) (recognizing specific provision for simple prejudgment interest in Minn.Stat. Ann. § 549.09); *Martin Glennon, Inc. v. First Fidelity Bank, N.A.*, 279 N.J.Super. 48, 652 A.2d 199 (App.Div.1995) (employing express language of N.J. R. Civ. Prac. R. 4:42–11 which designates as simple pre- and postjudgment interest).

19. While we do not dispute our prior recognition in *Gribben v. Kirk* of a circuit judge's discretion to calculate prejudgment interest, in accordance with the standard of review applicable to such awards and the governing statutory and decisional law, we interpret such discretion to necessarily be limited to a determination of the damages and period for which prejudgment interest is recoverable. *See Gribben*, 195 W.Va. at 501, 466

Affirmed in part, Reversed in part, and Remanded.

STARCHER, J., dissents.

S.E.2d at 160 ("Prejudgment interest may be calculated within the range of the circuit court's discretion to roughly and fairly compensate the plaintiff."); *Grove by and through Grove v. Myers*, 181 W.Va. 342, 347, 382 S.E.2d 536, 541 (1989) ("It is clear that *W. Va.Code*, 56–6–31 [1981] ... requires the trial court to determine which damages are special damages and to determine the date on which the right to bring the action for such damages accrued." (internal reference omitted)). In other words, both the percentage rate at which prejudgment interest is to be calculated and the type of prejudgment interest contemplated by law have been definitely established and authorized by the applicable statutory enactments and the decisions of this Court interpreting and applying those provisions. Only the damages for which and the dates from and to which prejudgment interest should be awarded remain within the purview of the circuit court. As the parties do not dispute the damages or the dates for which prejudgment interest is recoverable on the former employees' awards of back pay, we render no further decision in this regard.