719 S.E.2d 375

**KANAWHA COUNTY BOARD OF EDUCATION, Defendant Below, Petitioner**

v.

**Robert FULMER, Plaintiff Below, Respondent.**

No. 101578.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 21, 2011.

Decided Nov. 10, 2011.

208

Billie Jo Streyle, Bailey & Wyant, PLLC, Charleston, WV, for Petitioner.

William Mundy, Rebecca Stepto, Mundy & Nelson, Huntington, WV, for Respondent.

PER CURIAM:

This case is before this Court upon the appeal of the Kanawha County Board of Education (hereinafter "the Board") from an order of the Circuit Court of Kanawha County denying its motion to alter or amend a mandamus judgment requiring the Board to pay $259,566.99 in damages to the Appellee, Mr. Robert Fulmer. The Board's primary contention is that the damages award is erroneous because it fails to include an assessment of Mr. Fulmer's mitigation of damages. Subsequent to thorough evaluation of the

record, arguments of counsel, and applicable precedent, this Court reverses the order of the circuit court and remands this matter to the circuit court with directions to order a hearing before the administrative law judge for the explicit purpose of determining an appropriate damages award which includes an assessment of Mr. Fulmer's mitigation of damages.

## I. Factual and Procedural History

Appellee Robert Fulmer was employed as a mathematics teacher at Nitro High School in 1999. On March 18, 2005, a student classroom aide alleged that Mr. Fulmer had made sexual advances toward her and a classmate. Pre-disciplinary proceedings were conducted before an independent hearing examiner to address these allegations of misconduct, and the independent hearing examiner recommended that Mr. Fulmer be dismissed from employment. On July 11, 2005, the Board adopted the hearing examiner's recommended decision and terminated Mr. Fulmer. Mr. Fulmer was subsequently employed at Smoker Friendly in 2005, 2006, and 2007, earning approximately $58,314.04 during his tenure with Smoker Friendly.

Mr. Fulmer filed a Level IV grievance on July 13, 2005, and hearings were subsequently conducted on Mr. Fulmer's grievance in February 2008. During the Level IV grievance hearing, the issue of the mitigation of damages was briefly addressed, and the administrative law judge stated as follows: "In the event the Grievant is successful I would expect the order to read pretty much as Mr. Withrow [counsel for the Board] has described, put to the School Board to figure out what he's [Fulmer] out for the time that she [sic] should have been paid, and then if there's a dispute about it, as Mr. Withrow says, deal with it at that time . . . ."

During that same exchange in the Level IV hearing, Mr. Withrow, counsel for the Board, explained: "I mean we'd have to go back. We probably don't need all this on the record. I assume Mr. Fulmer's had some income over those years and we'd have to look (inaudible) and we would look at the whole picture assuming that's the order and, you know, assuming that's the way it would be resolved."

On October 29, 2008, the Grievance Board issued a decision in favor of Mr. Fulmer, finding that the Board of Education failed to meet its burden of proving that Mr. Fulmer had engaged in the alleged inappropriate and immoral conduct and that the students who had accused Mr. Fulmer were lacking in credibility. The Board was ordered to reinstate Mr. Fulmer. However, neither a computation of damages nor an evaluation of Mr. Fulmer's mitigation of damages was made at that time.

Having allowed his teaching certificate to lapse during the pendency of the underlying litigation, Mr. Fulmer provided the West Virginia Department of Education with the final materials necessary for the renewal of his teaching certificate on December 1, 2008. The certificate was renewed on December 5, 2008, and made retroactive to September 1, 2008. Mr. Fulmer was reinstated on December 15, 2008.

In February and March, 2009, counsel for the parties corresponded regarding a calculation of appropriate damages. On June 5, 2009, counsel for Mr. Fulmer contacted the Board and demanded full payment of damages. Counsel for Mr. Fulmer also wrote to the administrative law judge on June 17, 2009, and September 3, 2009, to request a hearing for the purpose of determining damages. On September 29, 2009, the administrative law judge denied the request for a hearing, finding absence of statutory authority to reopen the case.

Mr. Fulmer thereafter filed an October 14, 2009, Petition for Writ of Mandamus in the Circuit Court of Kanawha County seeking $277,274.52 in damages. On February 25, 2010, the circuit court held a show cause hearing. Although testimony was not taken at that hearing, counsel for both parties provided oral argument to the court, and counsel for Mr. Fulmer argued that the Board had failed to raise the issue of mitigation of damages at the Level IV hearing, resulting in waiver. In response, counsel for the Board explained that the Board had indeed raised the issue of mitigation of damages during the Level IV hearing but was informed by the administrative law judge that such calcula-

tions would be made after the conclusion of the hearing.[1]

The circuit court, by order entered April 1, 2010, granted Mr. Fulmer's requested writ of mandamus and ordered the Board to pay damages in the amount of $259,566.99,[2] plus attorney fees and expenses. The circuit court found that the Board was not entitled to an offset against Mr. Fulmer's back pay based on mitigation because the Board had failed to raise the issue of mitigation during the underlying Level IV hearings.

On April 14, 2010, the Board filed a motion to alter or amend judgment, contending that it had indeed raised the issue of mitigation of damages during the Level IV hearing before the administrative law judge; that the wages earned by Mr. Fulmer at Smoker Friendly should be offset against his award of back pay; and that the award of back pay should not be granted for the period of time during which Mr. Fulmer failed to renew his teaching certificate. The circuit court held hearing on the Board's motion to alter or amend on June 30, 2010, and issued an order entered July 6, 2010, denying the Board's motion to alter or amend. The Board now appeals that decision to this Court.

## II. Standard of Review

■ In syllabus point one of *Wickland v. American Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998), this Court explained as follows: "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." That underlying "standard of appellate review of a circuit court's order granting relief through the extraordinary writ of mandamus is de novo." Syl. Pt. 1, *Hensley v. West Virginia Dep't of Health & Human Resources*, 203 W.Va. 456, 508 S.E.2d 616 (1998).

■ As this Court has consistently expressed, "[a] writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling*, 153 W.Va. 538, 170 S.E.2d 367 (1969).

With those standards of review as guidance for this Court, the issues raised in this appeal will be addressed.

## III. Discussion

### A. Mitigation of Damages

■ The Board presents this Court with six distinct assignments of error, the first of which is the predominant issue of mitigation from which many other alleged errors proceed.[3] The Board contends that it definitive-

---

1. The Board's brief on the show cause issue also asserts that Mr. Fulmer's calculations regarding back pay were incorrect because he had used improper salary schedules for the relevant time periods and had improperly calculated damages for the period in which he was not reinstated due to his own failure to have a valid teaching certificate. Further, the Board raised issues regarding the effect of the damages calculation on Mr. Fulmer's retirement account and the amount of pre-judgment and post-judgment interest owed by the Board.

2. This $259,566.99 award represents Mr. Fulmer's original request for $277,274.52, reduced by the amount Mr. Fulmer concedes was miscalculated on the basis of improper salary schedules.

3. The assignments of error, as alleged by the Board, include the following:
   1. The Circuit Court erred by finding Respondent proved that he had a clear legal right to

the relief sought in the amount of $259,566.99 and granting Respondent's Revised Petition for Writ of Mandamus, because KCBOE did not fail to raise the defense of mitigation of damages and did not waive the defense of mitigation of damages at the Level IV proceeding, as reflected by the Level IV transcript.
   2. The Circuit Court erred by finding Respondent proved that he had a clear legal right to the relief sought in the amount of $259,566.99 and granting Respondent's Revised Petition for Writ of Mandamus, because the Circuit Court improperly refused to deduct income actually known to be earned by Respondent, while terminated from KCBOE, in the amount of $58,314.04, which resulted in Respondent being placed in a better position than he would have been had he not been terminated from KCBOE in violation of the public policy of West Virginia.
   3. The Circuit Court erred by finding Respondent proved that he had a clear legal right to

ly raised the issue of mitigation of damages with the Level IV administrative law judge but was specifically informed that issues regarding mitigation of damages would not be addressed until after the initial determination of Mr. Fulmer's entitlement to reinstatement. In response to the Board's assertions, Mr. Fulmer maintains that the Board waived its right to assert its entitlement to an offset for mitigation by failing to pursue that issue at the Level IV hearing.

■ In syllabus point two of *Mason County Board of Education v. State Superintendent of Schools*, 170 W.Va. 632, 295 S.E.2d 719 (1982), this Court emphasized the importance of a determination of mitigation of damages, explaining as follows:

> Unless a wrongful discharge is malicious, the wrongfully discharged employee has a duty to mitigate damages by accepting similar employment to that contemplated by his or her contract if it is available in the local area, and the actual wages received, or the wages the employee could have received at comparable employment where it is locally available, will be deducted from any back pay award; however, the burden of raising the issue of mitigation is on the employer.

This Court's review of the transcript of the Level IV hearing, as provided in the record before this Court, indicates that the issue of an assessment of mitigation of damages appeared to be secondary to the evaluation of Mr. Fulmer's entitlement to reinstatement at that stage in the underlying proceedings. As referenced above, the Level IV administrative law judge explained that if reinstatement

was determined to be appropriate, "I would expect the order to read pretty much as Mr. Withrow [counsel for the Board] has described, put to the School Board to figure out what he's [Fulmer] out for the time that she [sic] should have been paid, and then if there's a dispute about it, as Mr. Withrow says, deal with it at that time.  . . ." Counsel for the Board referenced the issue of mitigation at that hearing by saying "we'd have to go back. . . .  I assume Mr. Fulmer's had some income over those years and we'd have to look (inaudible) and we would look at the whole picture assuming that's the order and, you know, assuming that's the way it would be resolved."

While the mitigation of damages issue was not developed in the Level IV hearing, it appears that the administrative law judge purposely determined that a calculation and evaluation of the mitigation of damages issue would be postponed until after the initial hearing on the issue of Mr. Fulmer's entitlement to reinstatement. This Court finds that the Board did properly raise the issue of mitigation of damages at the hearing and thus preserved that issue. The administrative law judge's decision to delay the development of that issue is not tantamount to a Board of Education waiver of the mitigation issue. Recognizing that all issues surrounding damages had not been finalized in the Level IV hearing, counsel for Mr. Fulmer requested the administrative law judge to hold a subsequent hearing to resolve issues surrounding damages, and the administrative law judge refused that request. Thus, the mitigation of damages issue has never been

---

the relief sought in the amount of $259,566.99 and granting Respondent's Revised Petition for Writ of Mandamus, because the Circuit Court awarded Respondent damages for a period of time, when he was not reinstated by KCBOE, for his own failure to have his teaching certificate renewed in violation of the public policy of West Virginia.

4. The Circuit Court erred by finding Respondent proved that he had a clear legal right to the relief sought in the amount of $259,566.99 and granting Respondent's Revised Petition for Writ of Mandamus, because the Circuit Court ordered KCBOE pay Respondent improper pre-judgment interest and post-judgment interest, which were based on improper damages calculations of Respondent.

5. The Circuit Court erred by finding Respondent proved that he had a clear legal right to the relief sought in the amount of $259,566.99 and granting Respondent's Revised Petition for Writ of Mandamus, because the Circuit Court ordered KCBOE pay Respondent improper retirement benefits, which were based on improper damages calculations of Respondent.

6. The Circuit Court erred by finding Respondent proved that he had a clear legal right to the relief sought in the amount of $259,566.99 and granting Respondent's Revised Petition for Writ of Mandamus absent conducting an evidentiary hearing on the disputed damages issues between the parties.

fully evaluated, and a proper assessment has not been made.

◼ Based upon this Court's review of the matter, we find that the current damages award is deficient and inaccurate based upon the failure to integrate an assessment of Mr. Fulmer's mitigation of damages. Consequently, this matter must be remanded to the circuit court with directions to order a hearing before the administrative law judge for the development of salient facts in that forum and for the explicit purpose of determining an appropriate damages award which includes an assessment of Mr. Fulmer's mitigation of damages.

### B. Issues Surrounding Renewal of Teaching Certificate

◼ The Board also asserts that the circuit court erred by awarding Mr. Fulmer damages for the period during which he was not employed due to his own failure to renew his teaching certificate. The evidence presented in the Level IV hearing on this issue indicates that Mr. Fulmer initially filed an application for renewal of his teaching certificate in June 2008. In September 2008, the West Virginia Department of Education informed Mr. Fulmer that he needed to provide additional information in order to procure the renewal. Mr. Fulmer did not immediately provide this additional requested information. Thus, although he was reinstated by the Grievance Board effective October 29, 2008, he did not immediately resume his teaching position based upon his own failure to provide adequate information to the West Virginia Department of Education regarding his certificate renewal request. The application was ultimately processed for renewal on December 5, 2008, and he was reinstated to his teaching position on December 15, 2008.

It appears that the Board is correct in its assertion that it should not be required to pay damages for the period of time Mr. Fulmer was not reinstated due to his own failure to renew his teaching certificate, which includes dates from October 29, 2008, to December 15, 2008. However, Mr. Fulmer contends that he could have immediately resumed teaching on a provisional basis prior to final approval of his renewal request, pursuant to West Virginia Code § 18A–3–2 (1990) (Repl.Vol.2007).[4] Consequently, upon remand, the administrative law judge should allow introduction of evidence on that narrow issue and, if necessary, adjust the damages award based upon the evidence submitted by the parties.

### C. Interest and Retirement

Finally, the Board addresses the effect of the circuit court's inaccurate damages ruling upon the calculations of interest and retirement benefits. Subsequent to the hearing to be conducted upon remand of this matter, the final damages award will necessarily alter the calculation of pre-judgement and post-judgment interest and the effect upon the calculation of Mr. Fulmer's retirement benefits. Thus, those items will require recalculation in accordance with the ultimate award.

### IV. Conclusion

The writ of mandamus standard referenced above provides that a writ of mandamus is not properly issued unless there is a clear legal right to relief, a legal duty to do what is compelled, and the absence of another remedy. *Kucera*, 153 W.Va. at 539, 170 S.E.2d at 367, syl. pt. 2. In concluding that Mr. Fulmer had a clear legal right to relief, the circuit court erroneously found that the Board had failed to raise the issue of mitigation with the administrative law judge. Based upon the foregoing, this Court finds that the Board did raise the issue of mitigation in the Level IV hearing and that a remand is necessary for an evaluation and determination of an appropriate damages award which includes an assessment of Mr.

---

4. West Virginia Code § 18A–3–2 contemplates that a teacher may be employed prior to obtaining a valid teaching certificate, providing in pertinent part as follows:

If a teacher is employed in good faith on the anticipation that he or she is eligible for a certificate and it is later determined that the teacher was not eligible, the state superintendent of schools may authorize payment by the county board of education to the teacher for a time not exceeding three school months or the date of notification of his or her ineligibility, whichever shall occur first.

Fulmer's mitigation of damages,[5] pre-judgment and post-judgment interest issues, the manner in which retirement benefits will be affected, and the six-week period during which Mr. Fulmer allegedly could not return to work due to his own delay in renewing his teaching certificate.[6]

Reversed and Remanded with Directions.

Chief Justice WORKMAN is disqualified.

5. Mr. Fulmer contends that the Board, upon initial investigation of the claims, ignored witnesses favorable to Mr. Fulmer and failed to adequately evaluate the credibility of the students who accused Mr. Fulmer. He further asserts that the Board eventually denied any wrongdoing by Mr. Fulmer when the Board was subjected to a civil action against the Board based upon Mr. Fulmer's alleged acts. Although Mr. Fulmer premises his contention that the Board acted with malice upon these facts, the evidence of record does not support the contention that Mr. Fulmer's termination was malicious. The Level IV hearing included an evidentiary evaluation of the circumstances under which Mr. Fulmer was terminated. The evidence did not support a finding of malicious action by the Board, and no such finding was made.

The record is clear that the allegations of sexual misconduct toward two female students were brought to the attention of the Board and fully investigated through a pre-disciplinary evidentiary hearing conducted by an independent hearing examiner. Specifically, the hearing examiner found Mr. Fulmer "guilty of the charges alleged" and recommended that he "should be dismissed from Kanawha County Schools." Pursuant to that recommendation of the hearing examiner, the Board terminated Mr. Fulmer's employment. The administrative law judge subsequently ordered the Board to reinstate Mr. Fulmer "to his previous position, and to compensate him for lost wages and benefits to which he would have been entitled had he remained in his position, with legal interest on any back pay." A finding of malice was not made. In discussions of the malice issue before the circuit court, the court noted as follows during the February 25, 2010, show cause hearing: "I don't think that the issue o[f] malice is going to float."

6. The Board also contends that the circuit court's order results in a violation of public policy by failing to deduct Mr. Fulmer's earnings while employed by Smoker Friendly. The Board argues that by refusing to deduct this income from the ultimate award, the circuit court essentially placed Mr. Fulmer in a better position than he would have been in had he not been terminated. Having determined that the Board is entitled to an evidentiary hearing for the purpose of determining damages, including an assessment of mitigation of damages, this Court does not address the public policy component of the Board's argument.